**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY SHIPP, CHRISTOPHER DIXON, ERIC JOHNSON, and ZACHARY JOHNSON, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID GOMEZ, as Warden of the Northern Reception and Classification Center, and ROB JEFFREYS, as Director of the Northern Reception and Classification Center,<br><br>Defendants. | Case No. 1:22-cv-00888<br><br>Hon. Robert M. Dow Jr.<br><br>Magistrate Judge Gabriel A. Fuentes |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

PLAINTIFFS ........................................................................................................................3

CONDITIONS OF CONFINEMENT AT NRC ..................................................................4

I.      The Conditions at NRC Deprive Plaintiffs of Basic Human Needs. ...................................4

      A.      Vermin Infestation. ...........................................................................................4

      B.      Unsanitary and Deficient Plumbing..................................................................4

      C.      Lack of Access to Cleaning Supplies.................................................................6

      D.      Rotten and Nutritionally Deficient Food Prepared in an Unsanitary
            Kitchen..............................................................................................................6

      E.      Lack of Out of Cell Time...................................................................................7

II.     Defendants Have Permitted the Conditions at NRC to Deteriorate and Fester. .................8

ARGUMENT ........................................................................................................................9

III.    Plaintiffs are Entitled to a Preliminary Injunction. ............................................................9

      A.      Plaintiffs are Likely to Succeed on the Merits...................................................9

            1.      Plaintiffs are Likely to Succeed in Demonstrating that the
                   Conditions at NRC are Sufficiently Serious to Violate Their Eighth
                   Amendment Rights. ..................................................................................9

                   a.      Plaintiffs are Likely to Succeed in Demonstrating that the
                         Vermin Infestation is Sufficiently Serious to Violate Their
                         Eighth Amendment Rights............................................................10

                   b.      Plaintiffs are Likely to Succeed in Demonstrating that the
                         Deficient and Unsanitary Plumbing, Including Lack of
                         Access to Clean Water, is Sufficiently Serious to Violate
                         their Eighth Amendment Rights. ..................................................11

                   c.      Plaintiffs are Likely to Succeed in Demonstrating that Their
                         Lack of Access to Cleaning Supplies in an Unsanitary
                         Environment is Sufficiently Serious to Violate Their Eighth
                         Amendment Rights. .....................................................................13

                   d.      Plaintiffs are Likely to Succeed in Demonstrating that the
                         Contaminated, Rotten, and Otherwise Nutritionally

i

Deficient Food is Sufficiently Serious to Violate Their Eighth Amendment Rights..............................................................14

e.    Plaintiffs are Likely to Succeed in Demonstrating that Their Lack of Out of Cell Time is Sufficiently Serious to Violate Their Eighth Amendment Rights....................................................15

2.    Plaintiffs are Likely to Succeed in Demonstrating that Defendants Were Deliberately Indifferent to the Unconstitutional Conditions at NRC. ..........................................................................................................17

a.    Defendants Had Knowledge of the Conditions at NRC. ...............17

b.    Defendants Failed to Take Reasonable Measures to Abate Substantial Risk of Serious Harm to Plaintiffs. ............................19

B.    Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief and Have No Adequate Remedy at Law. ....................................................................20

C.    The Balance of Equities Favors Plaintiffs. ............................................................21

D.    Public Interest Favors Issuing an Injunction...........................................................22

E.    The Court Should Waive Bond...............................................................................22

CONCLUSION......................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonelli v. Sheahan*,
    81 F.3d 1422 (7th Cir. 1996) ...................................................................15, 16, 17

*Bentz v. Hardy*,
    638 F. App'x 535 (7th Cir. 2016) ........................................................................10

*Byrd v. Hobart*,
    761 F. App'x 621 (7th Cir. 2019) ..................................................................14, 15

*Complete Angler, LLC v. City of Clearwater*,
    607 F. Supp. 2d 1326 (M.D. Fla. 2009)...............................................................22

*Davenport v. DeRobertis*,
    844 F.2d 1310 (7th Cir. 1988) .............................................................................16

*Delaney v. DeTella*,
    256 F.3d 679 (7th Cir. 2001) ...............................................................................15

*Dixon v. Godinez*,
    114 F.3d 640 (7th Cir. 1997) ........................................................................18, 19

*Downs v. Carter*,
    No. 13 C 3998, 2016 WL 1660491 (N.D. Ill. Apr. 27, 2016)...............................12

*Farmer v. Brennan*,
    511 U.S. 825 (1994)..............................................................................................10

*Flynn v. Doyle*,
    630 F. Supp. 2d 987 (E.D. Wisc. 2009)...............................................................21

*Foster v. Ghosh*,
    4 F. Supp. 3d 974 (N.D. Ill. 2013) .......................................................................22

*French v. Owens*,
    777 F.2d 1250 (7th Cir. 1985) ......................................................................14, 15, 16

*Gillis v. Litscher*,
    468 F.3d 488 (7th Cir. 2006) ........................................................................10, 13, 17

*Gomez v. Palmer*,
    181 F. Supp. 3d 498 (N.D. Ill. 2015) ..................................................................17

*Gray v. Hardy*,
    826 F.3d 1000 (7th Cir. 2016) ...................................................................... *passim*

*Hardeman v. Curran*,
    933 F.3d 816 (7th Cir. 2019) ....................................................................12, 13

*Hicks v. Irvin*,
    No. 06 C 645, 2014 WL 1292541 (N.D. Ill. Mar. 31, 2014) ..................................11

*Holleman v. Aramark Corp.*,
    No. 1:11-cv-323-TWP-DKL, 2013 WL 5786869 (S.D. Ind. Oct. 28, 2013)...........................15

*Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*,
    582 F.3d 721 (7th Cir. 2009) ...............................................................................9

*Hoskins v. Dilday*,
    No. 16-CR-334-MJR-SCW, 2017 WL 951410 (S.D. Ill. Mar. 10, 2017) ........................21, 22

*Iglesias v. Federal Bureau of Prisons*,
    Case No. 19-CV-415-NJR, 2021 WL 6112790 (S.D. Ill. Dec. 27, 2021) ..............................20

*Jackson v. Duckworth*,
    955 F.2d 21 (7th Cir. 1992) ....................................................................12, 13

*Jones 'El v. Berge*,
    164 F. Supp. 2d 1096 (W.D. Wisc. 2001).........................................................21, 22

*Lyons v. Vergara*,
    Case No. 4 CV 9564, 2016 WL 4493455 (N.D. Ill. Aug. 26, 2016) ....................................19

*Michigan v. U.S. Army Corps of Eng'rs*,
    667 F.3d 765 (7th Cir. 2011) ...............................................................................9

*Perkins v. Williams*,
    15 C 6186, 2018 WL 453743 (N.D. Ill. Jan. 17, 2018) ..........................................11, 13, 14, 20

*Preston v. Thompson*,
    589 F.2d 300 (7th Cir. 1978) .............................................................................21

*Richard v. Pfister*,
    483 F. Supp. 3d 532 (N.D. Ill. 2020) ....................................................................16

*Robinson v. DeTella*,
    No. 95 C 4463, 1997 WL 53108 (N.D. Ill. Feb. 5, 1997).......................................12

*Silva v. Pfister*,
    No. 18-cv-5214, 2021 WL 1103483 (N.D. Ill. Mar. 23, 2021) ...................................... *passim*

*Smith v. Bd. of Election Comm'rs for City of Chicago*,
  591 F. Supp. 70 (N.D. Ill. 1984) .................................................22

*Smith v. Exec. Dir. of Indiana War Mem'ls Comm'n*,
  742 F.3d 282 (7th Cir. 2014) .....................................................9

*Tay v. Dennison*,
  457 F. Supp. 3d 657 (S.D. Ill. 2020) ................................21, 22

*Thomas v. Illinois*,
  697 F.3d 612 (7th Cir. 2012) ....................................................10

*Toussaint v. Yockey*,
  722 F.2d 1490 (9th Cir. 1984) ..................................................15

*Ty, Inc. v. Jones Group, Inc.*,
  98 F. Supp. 2d 988 (N.D. Ill. 2000) .....................................9, 20

*Vinning-El v. Long*,
  482 F.3d 923 (7th Cir. 2007) ..............................................14, 17

*Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*,
  567 F.2d 692 (7th Cir. 1977) ....................................................22

*Williams v. Collins*,
  No. 14 C 5275, 2015 WL 4572311 (N.D. Ill. July 29, 2015) .................11

*Williams v. Williams*,
  No. 1:16-cv-209, 2019 WL 265095 (N.D. Ill. Jan. 18, 2019) ................10

**Statutes**

18 U.S.C. § 3626(a)(2) ................................................................23

**Other Authorities**

Charles A. Wright et al., 11A *Federal Practice and Procedure* (3d ed. April 2021
  Update) ..............................................................................20

Elizabeth Weill-Greenberg, *Illinois Advocs. Call for Action After Prison Offs.*
  *Misled on Contaminated Water*, The Appeal, https://theappeal.org/illinois-
  prison-water-legionella/ (Apr. 7, 2022) ...................................5

Environmental Protection Agency, *National Primary Drinking Water*
  *Regulations*, https://www.epa.gov/sites/default/files/2016-
  06/documents/npwdr_complete_table.pdf (May 2009). ...........................5

Illinois Environmental Protection Agency, *Drinking Water Branch Lead and Copper Sample Summary Results*, http://water.epa.state.il.us/dww/JSP/LeadAndCopperSampleSummaryResults. jsp?tinwsys_is_number=718142&tinwsys_st_code=IL&begin_date=&end_da te=&counter=0 (last visited May 8, 2022)..........................................................................4, 5

*Northern Reception and Classification Center*, Illinois.gov, https://www2.illinois. gov/idoc/facilities/Pages/NorthernReceptionandClassificationCenter.aspx (last visited May 13, 2022) ...............................................................................................................1

John Howard Association, *Visit to Stateville & IDOC's Northern Reception Center April 2021*, https://static1.squarespace.com/ static/5beab48285ede1f7e8102102/t/610991467729c958f0ff1f7c/1628016967 293/JHA+Stateville+2021+final.pdf (last visited May 8, 2022) ...............................................1

KWQC Staff, *Legionella bacteria detected at two Illinois Department of Corrections facilities* KWQC, https://www.kwqc.com/2022/03/14/legionella- bacteria-detected-two-illinois-department-corrections-facilities/ (Mar. 14, 2022) ......................................................................................................................................5

## INTRODUCTION

Named Plaintiffs Gregory Shipp, Christopher Dixon, Eric Johnson, and Zachary Johnson were or currently are residents at the Illinois Department of Corrections' ("IDOC") Northern Reception and Classification Center ("NRC") in Crest Hill, Illinois when the complaint in this action was filed. NRC has 1,800 beds and functions as an adult male intake and processing unit for the State of Illinois. *Northern Reception and Classification Center*, Illinois.gov, https://www2. illinois.gov/idoc/facilities/Pages/NorthernReceptionandClassificationCenter.aspx (last visited May 13, 2022). Offenders admitted to NRC are in reception status until they are transferred to a permanent institution. *Id.* NRC also operates as a temporary holding facility when offenders are in transit for court, are being prepared for release, or are on a medical writ. John Howard Association, *Visit to Stateville & IDOC's Northern Reception Center April 2021*, https://static1. squarespace.com/static/5beab48285ede1f7e8102102/t/610991467729c958f0ff1f7c/16280169672 93/JHA+Stateville+2021+final.pdf at 36-37, 39 (last visited May 8, 2022).[1]

While housed at NRC, Named Plaintiffs and the members of the class they seek to represent (collectively "Plaintiffs") were or currently are forced to endure horrendous living conditions: the water at NRC is contaminated; the facility is rife with vermin, including mice, cockroaches and birds; the toilets, sinks, and showers are covered in mold; plumbing malfunctions cause sewage overflow; Plaintiffs do not receive regular cleaning supplies; and Plaintiffs were and are denied all out of cell exercise time. In addition, Plaintiffs receive food that is often spoiled, contaminated, rotten, nutritionally deficient, and prepared in an unsanitary environment.

---

[1] Attached as Exhibit C to Exhibit 5, Declaration of Benjamin J. Bradford in Support of Plaintiffs' Motion for Preliminary Injunction ("Ex. 5").

These conditions are unconstitutional. Defendants David Gomez, Warden of NRC, and Rob Jeffreys, Director of the Illinois Department of Corrections[2] (collectively "Defendants") have not rectified these conditions despite knowing about them. Consequently, Named Plaintiffs bring this § 1983 action on behalf of themselves and all others similarly situated and request that this Court issue an order requiring Defendants to (1) take all necessary steps to eliminate the vermin infestation at NRC, including, but not limited to, taking action to eliminate the current infestation and prevent all future infestations; (2) take all necessary steps to repair and maintain the plumbing system at NRC, including ensuring that prisoners have clean and safe drinking water, that there are no sewage overflows, and that drains are in proper working order; (3) provide all prisoners at least 64 (sixty-four) ounces of clean drinking water per day, through water bottles or other filtered water, until such time that the plumbing system can adequately supply clean and safe drinking water; (4) provide prisoners with cleaning supplies at least one time per week, with additional cleaning supplies made available to prisoners as needed; (5) ensure that food provided to prisoners is safe and of adequate nutritional value, including, but not limited to, serving only food that is not rotten, spoiled, and/or expired, ensuring proper sanitation in food preparation and storage areas, preparing food to an adequate temperature, and providing adequate portion sizes; (6) take all necessary steps to ensure that prisoners' common spaces (*e.g.*, showers) are free of mold and are sanitary; and (7) provide at least twenty hours out of cell time for prisoners held at NRC for over thirty days and at least ten hours of out of cell time for prisoners held at NRC for fewer than thirty days, including, in either case, a minimum of five hours of out of cell exercise time per week.[3]

---

[2] Rob Jeffreys' job title may be erroneously stated in Plaintiffs' Complaint and Plaintiffs' First Amended Complaint as the Director of the Northern Reception and Classification Center. Mr. Jeffreys' title is, at least, Director of the Illinois Department of Corrections.

[3] Following the completion of expedited discovery, including expert reports, Plaintiffs intend to provide a proposed order providing more specificity regarding the relief that they request.

Plaintiffs meet all requirements for preliminary relief, and this Court should grant Plaintiffs' motion for preliminary injunction.

## **PLAINTIFFS**

Named Plaintiff Gregory Shipp arrived at NRC on or about September 29, 2021 and was held there for over five months. (Exhibit 1, Declaration of Gregory Shipp in Support of Plaintiffs' Motion for Preliminary Injunction ¶ 1 ("Ex. 1").) On March 16, 2022, shortly after filing the complaint in this case, he was transferred to Hill Correctional Center in Galesburg, Illinois. (*Id.*)

Named Plaintiff Christopher Dixon arrived at NRC on or about June 17, 2021. (Exhibit 2, Declaration of Christopher Dixon in Support of Plaintiffs' Motion for Preliminary Injunction ¶ 1 ("Ex. 2").) Mr. Dixon is still at NRC. (*Id.*)

Named Plaintiff Eric Johnson arrived at NRC on or about November 15, 2021. (Exhibit 3, Declaration of Eric Johnson in Support of Plaintiffs' Motion for Preliminary Injunction ¶ 1 ("Ex. 3").) On April 15, 2022, shortly after joining this case as a named plaintiff, he was transferred to Robinson Correctional Center. (*Id.* ¶ 3.)

Named Plaintiff Zachary Johnson arrived at NRC on or about October 20, 2021. (Exhibit 4, Declaration of Zachary Johnson in Support of Plaintiffs' Motion for Preliminary Injunction ¶ 1 ("Ex. 4").) On April 13, 2022, shortly after joining this case as a named plaintiff, he was transferred to Dixon Correctional Center in Dixon, Illinois. (*Id.*)

The remaining proposed class consists of approximately one thousand individuals currently housed at NRC, all individuals incarcerated at NRC at any time since January 1, 2020, and all individuals who will be housed at NRC in the future while the conditions remain unconstitutional.

## CONDITIONS OF CONFINEMENT AT NRC

**I.      The Conditions at NRC Deprive Plaintiffs of Basic Human Needs.**

**A.   Vermin Infestation.**

Vermin, including birds, mice, cockroaches, and other insects, are pervasive throughout the cell blocks, in Plaintiffs' cells, in the showers, and in the kitchen at NRC.  (Ex 1. ¶¶ 23, 26; Ex. 2 ¶¶ 8-9, 17; Ex. 3 ¶¶ 7-9, 15; Ex. 4 ¶¶ 6-7, 15.)  Vermin often bite Plaintiffs while they sleep, and mice eat through their commissary bags of food.  (Ex. 1 ¶¶ 23-24; Ex. 3 ¶ 15; Ex. 4 ¶ 15.)  Plaintiffs have found vermin and vermin feces in their food.  (Ex. 4 ¶ 10.)  The vermin leave behind feces in Plaintiffs' cells that Plaintiffs cannot clean or disinfect because they lack cleaning supplies.  (Ex. 1 ¶¶ 9-11, 23; Ex. 2 ¶¶ 9, 15-16.)  Bird droppings, which are never cleaned, cover the areas just outside the cells.  (Ex. 1 ¶ 23; Ex. 2 ¶ 8.)  Plaintiffs sacrifice their personal items—bath towels, clothing, bedding, and bags—by stuffing them under their cell doors to try to keep the vermin at bay.  (Ex. 1 ¶ 25; Ex. 2 ¶ 9; Ex. 4 ¶ 15.)  Vermin are also present in the showers, where they have bitten Plaintiffs.  (Ex. 1 ¶ 26; Ex. 2 ¶ 17; Ex. 3 ¶ 25.)  The vermin infestation is so severe that at least one correctional officer brings mothballs and Pine-Sol to NRC to ward off vermin.  (Ex. 1 ¶ 47; Ex. 4 ¶ 36.)

**B.   Unsanitary and Deficient Plumbing.**

The water at NRC is unsafe and unclean.  (Ex. 1 ¶¶ 17, 19-20; Ex. 3 ¶¶ 28-30; Ex. 4 ¶¶ 18-20.)  Plaintiffs' cell sink water is often brown or yellow, smells and tastes foul, and makes them sick.  (Ex. 1 ¶ 16; Ex. 2 ¶¶ 4, 6; Ex. 3 ¶ 29; Ex. 4 ¶ 18.)  Between July 2021 and December 2021, tests performed by the Illinois Environmental Protection Agency on NRC's water supply showed dangerous levels of copper and lead.  Illinois Environmental Protection Agency, *Drinking Water Branch Lead and Copper Sample Summary Results*, http://water.epa.state.il.us/dww/JSP/ LeadAndCopperSampleSummaryResults.jsp?tinwsys_is_number=718142&tinwsys_st_code=IL

&begin_date=&end_date=&counter=0 (last visited May 8, 2022).[4] These tests revealed 2.28 milligrams per liter ("mg/L") of copper and 0.0395 mg/L[5] of lead in NRC's water supply. (Ex. 5 at Ex. A.) As set by the EPA, the maximum allowable contaminant level for copper and lead in drinking water is 1.3 mg/L and 0.015 mg/L, respectively. Environmental Protection Agency, *National Primary Drinking Water Regulations*, https://www.epa.gov/sites/default/files/2016-06/documents/npwdr_complete_table.pdf (May 2009).[6] At least twice between October and December 2021, Plaintiffs were told the water was not safe for consumption and were given a limited amount of water bottles. (Ex. 1 ¶¶ 17-19.) In December 2021, Plaintiffs stopped receiving water bottles and were told that the water was safe to consume, but the water still looked, tasted, and smelled as it did when it was deemed unsafe. (Ex. 1 ¶ 19.)

In March 2022, tests revealed that water in certain NRC wings contained Legionella bacteria. Elizabeth Weill-Greenberg, *Illinois Advocates Call for Action After Prison Officials Mislead on Contaminated Water*, The Appeal, https://theappeal.org/illinois-prison-water-legionella/ (Apr. 7, 2022);[7] *see also* KWQC Staff, *Legionella Bacteria Detected at Two Illinois Department of Corrections Facilities*, KWQC, https://www.kwqc.com/2022/03/14/legionella-bacteria-detected-two-illinois-department-corrections-facilities/ (Mar. 14, 2022).[8] (Ex. 1 ¶ 20; Ex. 2 ¶ 5; Ex. 3 ¶¶ 28-29.) Plaintiffs were notified that water would be brought in for their consumption, but they have not received any safe water; the water from cell sinks remains their only source of drinking water. (*See* Ex. 1 ¶ 22; Ex. 2 ¶ 6; Ex. 3 ¶¶ 28-29; Ex. 4 ¶ 19.)

---

[4] Attached as Exhibit A to Ex. 5.
[5] The test numbers listed in this memorandum differ from those listed in Plaintiffs' Complaint (Dkt. 1) and in Plaintiffs' Amended Complaint. (Dkt. 18.) The test numbers listed in this memorandum reflect the results from the Illinois Environmental Protection Agency.
[6] Attached as Exhibit B to Ex. 5.
[7] Attached as Exhibit D to Ex. 5.
[8] Attached as Exhibit E to Ex. 5.

Plaintiffs also experience frequent plumbing malfunctions that affect their toilets, sinks, showers, and drinking water. (Ex. 1 ¶ 13-15; Ex. 3 ¶¶ 19-20; Ex. 4 ¶¶ 17, 30.) Overflowing toilets have caused raw sewage to flow into cells, and Plaintiffs' toilets are covered with mold and human feces. (*See* Ex. 1 ¶ 14; Ex. 2 ¶¶ 13-14; Ex. 3 ¶¶ 16, 19-20.) Leaking sinks disrupt Plaintiffs' sleep, and the showers, which do not drain, are full of mold, mildew, and grime. (Ex. 1 ¶ 15; Ex. 2 ¶ 17; Ex. 3 ¶ 24; Ex. 4 ¶¶ 17.)

### C. Lack of Access to Cleaning Supplies.

Plaintiffs do not receive access to sufficient cleaning supplies so they cannot clean away the filth and mold in their cells. (Ex. 1 ¶¶ 7-10; Ex. 2 ¶¶ 13-16; Ex. 3 ¶¶ 17, 22-23; Ex. 4 ¶¶ 13-14.) Plaintiffs have resorted to using their shampoo or state-issued bars of soap—the same soap they must use for bathing—to try to keep their cells clean. (Ex. 1 ¶ 11; Ex. 2 ¶ 16; Ex. 4 ¶ 14.) NRC correctional staff do not follow a schedule for distributing cleaning supplies and frequently ignore Plaintiffs' requests for supplies. (Ex. 1 ¶¶ 7-8; Ex. 2 ¶¶ 15-16; Ex. 3 ¶¶ 21-23; Ex. 4 ¶ 14.) Plaintiffs receive cleaning supplies only about once a month, usually consisting of only a small amount of diluted bleach and no rags, sponges, or brushes, so they must use their towels, bedding, clothing, or hands to apply the bleach. (Ex. 1 ¶ 9-11; Ex. 2 ¶ 16; Ex. 3 ¶¶ 22-23; Ex. 4 ¶ 14.) Plaintiffs have even had to use their few belongings to clean sewage overflows. (*See* Ex. 1 ¶ 15; Ex. 2 ¶ 14; Ex. 3 ¶ 19.)

### D. Rotten and Nutritionally Deficient Food Prepared in an Unsanitary Kitchen.

Plaintiffs are served rotten or spoiled food nearly every day: they have received green lunch meat, moldy bread, visibly undercooked meat, spoiled milk, and food well past its expiration date. (Ex. 1 ¶ 32; Ex. 2 ¶ 10; Ex. 3 ¶¶ 12, 14; Ex. 4 ¶¶ 10-11.) Food sits out for hours after it is prepared. (Ex. 3 ¶ 6.) Plaintiffs often feel ill after eating the food, which comes in small, "child-sized" portions. (Ex. 1 ¶ 32; Ex. 2 ¶ 11; Ex. 4 ¶ 11.) Plaintiffs have experienced significant weight loss

while at NRC and estimate that some meals are no more than 350 calories. (Ex. 1 ¶ 33; Ex. 2 ¶ 11; Ex. 3 ¶ 13.)

Food at NRC is prepared in an unsanitary and filthy environment. (Ex. 3 ¶¶ 5-10; Ex. 4 ¶ 6.) The kitchen at NRC, like Plaintiffs' cells, is overrun with vermin and covered in mold. (Ex. 3 ¶¶ 5-10; Ex. 4 ¶ 7.) Cockroaches and rodents crawl on cooking pans. (Ex. 3 ¶¶ 7-8; Ex. 4 ¶ 6.) Cockroaches crawl on food, on food preparation areas, in the food storage pantry, and in the refrigerators, where food is stored uncovered. (Ex. 3 ¶¶ 7-8; Ex. 4 ¶ 8.) Mice burrow into bags of food and leave behind their waste. (Ex. 4 ¶¶ 6, 10.) Roof leaks in the kitchen cause mold and dirty water to fall onto clean pots and food trays that are not re-washed. (Ex. 3 ¶ 5.) Broken refrigerators leak coolant, broken stovetops make preparing food to a proper temperature difficult, and clogged drains allow dirt, mold, food, and other grime to cling to the floors. (Ex. 4 ¶ 9.)

### E. Lack of Out of Cell Time.

Plaintiffs are confined to their unsanitary, vermin-infested cells nearly twenty-four hours a day, seven days a week, and Plaintiffs cannot engage in meaningful exercise inside their cells.[9] (Ex. 1 ¶ 34; Ex. 2 ¶ 19; Ex. 3 ¶¶ 31-32; Ex. 4 ¶ 21.) Between November 2021 and late February 2022, Plaintiffs received no out of cell exercise time. (Ex. 1 ¶ 34; Ex. 2 ¶ 19; Ex. 3 ¶ 31; Ex. 4 ¶ 21.) Because their cells are windowless, Plaintiffs did not see daylight for months. (*See* Ex. 3 ¶ 31.) Indeed, in 2021, the John Howard Association published a report on conditions at NRC that highlighted the effects of the restrictive housing on inmates, noting that some inmates "appeared to have neglected their hygiene, which can be an indication of decompensation or neglect." (Ex. 5 at Ex. C at 42.)

---

[9] Some Plaintiffs reported that they received out of cell time shortly after the complaint in this action was filed. (*See* Ex. 1 ¶ 34; Ex. 2 ¶ 19; Ex. 3 ¶ 32; Ex. 4 ¶ 21.) They further reported that out of cell time again ceased several weeks later. It is not clear whether out of cell time is being given on a regular basis now, or whether it was only given for a limited time.

## II.     Defendants Have Permitted the Conditions at NRC to Deteriorate and Fester.

Plaintiffs have complained formally about the conditions to NRC officials and staff to no avail.  Grievance forms are difficult to obtain at NRC: they are passed out infrequently, and correctional staff often refuse to provide them at all.  (Ex. 1 ¶ 35; Ex. 2 ¶ 20; Ex. 3 ¶¶ 33-36; Ex. 4 ¶ 22.)  To obtain grievance forms, Plaintiffs must persistently ask correctional staff, who have referred to grievances as "bitch paper."  (*See* Ex. 1 ¶¶ 35-36; Ex. 2 ¶ 20; Ex. 3 ¶¶ 33-34; Ex. 4 ¶ 22.)  Even when Plaintiffs can obtain grievance forms, they wait up to several weeks before correctional staff collect them.  (Ex. 1 ¶ 35; Ex. 2 ¶ 20; Ex. 3 ¶ 33; Ex. 4 ¶ 22.)  Despite these difficulties, Plaintiffs have submitted several grievances about the conditions at NRC.  (*See* Ex. 1 ¶¶ 38-45; Ex. 2 ¶¶ 21-30; Ex. 3 ¶¶ 37-42; Ex. 4 ¶¶ 23-29.)  Many of those grievances have been outstanding for months, with no response or acknowledgment of their complaints.  (*See* Ex. 1 ¶ 39; Ex. 2 ¶¶ 26, 29; Ex. 3 ¶¶ 36-37; Ex. 4 ¶ 28.)

Because the grievance process has been both arduous and unavailing, Plaintiffs also have complained repeatedly to correctional staff.  (Ex. 1 ¶ 46; Ex. 2 ¶ 31; Ex. 3 ¶ 43; Ex. ¶ 30.)  While some correctional staff acknowledge that conditions at NRC are poor, most of Plaintiffs' complaints are ignored or met with disdain.  (Ex. 1 ¶¶ 46-48; Ex. 2 ¶¶ 31-33; Ex. 3 ¶¶ 17, 22-23, 25, 34, 44-45; Ex. 4 ¶¶ 30-31.)  For example, one correctional officer stated that he did not want other correctional staff to work to resolve the conditions.  (*See* Ex. 2 ¶ 33.)  Other times, correctional staff tell Plaintiffs to live with the conditions: for example, in response to Plaintiffs' concerns about kitchen conditions and contaminated food, kitchen supervisors tell Plaintiffs to serve the rotten or vermin-infested food anyway or say that nothing can be done.  (Ex. 4 ¶¶ 6, 10, 33.)  Plaintiffs have even seen high level officials, including Warden Gomez, in NRC's kitchen while these conditions are present.  (Ex. 4 ¶ 34.)

## ARGUMENT

**III.    Plaintiffs are Entitled to a Preliminary Injunction.**

To obtain a preliminary injunction, Plaintiffs must establish that: (i) there is a reasonable likelihood of success on the merits, (ii) they are likely to suffer irreparable harm absent preliminary relief, (iii) the "balance of equities tips in [their] favor (i.e., denying an injunction poses a greater risk to [Plaintiffs] than granting an injunction poses to the [IDOC])," and (iv) the injunction is in the public interest. *Smith v. Exec. Dir. of Indiana War Mem'ls Comm'n*, 742 F.3d 282, 286 (7th Cir. 2014) (internal quotation marks omitted). Plaintiffs meet all requirements for preliminary relief here.[10]

**A.    Plaintiffs are Likely to Succeed on the Merits.**

To demonstrate likely success, Plaintiffs need "only to present a claim plausible enough that (if the other preliminary injunction factors cut in their favor) the entry of a preliminary injunction would be an appropriate step." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 783 (7th Cir. 2011); *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). As set forth below, Plaintiffs are likely to succeed on their Eighth Amendment claim because (1) the conditions of their confinement at NRC are unconstitutional and (2) Defendants have a sufficiently culpable state of mind.

**1.    Plaintiffs are Likely to Succeed in Demonstrating that the Conditions at NRC are Sufficiently Serious to Violate Their Eighth Amendment Rights.**

To succeed on an Eighth Amendment conditions of confinement claim, Plaintiffs must show that the conditions deny Plaintiffs "the minimal civilized measure of life's necessities."

---

[10] Courts also have explained that a Plaintiff must show he has no adequate remedy at law. *See Ty, Inc. v. Jones Group., Inc.*, 98 F. Supp. 2d 988, 990-91 (N.D. Ill. 2000). As discussed in Section III.B., *infra*, these two elements involve substantially the same analysis and are often merged. Plaintiffs will suffer irreparable harm absent immediate relief and likewise have no adequate remedy at law.

*Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (quotations omitted). These include "adequate food, clothing, shelter, and medical care[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A combination of inadequate conditions may violate the Eighth Amendment even if each condition, in isolation, would not be sufficient. *Gillis*, 468 F.3d at 493. Thus, courts analyze the totality of the conditions to determine whether a prisoner's Eighth Amendment rights have been violated. *See Williams v. Williams*, No. 1:16-cv-209, 2019 WL 265095, at \*4-5 (N.D. Ill. Jan. 18, 2019). Plaintiffs are likely to succeed in establishing that the conditions at NRC, both individually and collectively, have deprived Plaintiffs of the "minimal civilized measure of life's necessities." *Gillis*, 468 F.3d at 491.

> **a. Plaintiffs are Likely to Succeed in Demonstrating that the Vermin Infestation is Sufficiently Serious to Violate Their Eighth Amendment Rights.**

A vermin infestation can cause significant physical harm because of exposure to disease-carrying vermin, and "the potential psychological harm from living in a small cell infested with [vermin] is pretty obvious." *Thomas v. Illinois*, 697 F.3d 612, 615 (7th Cir. 2012) (Posner, J.). A vermin infestation can violate a prisoner's Eighth Amendment rights even when a prisoner escapes disease or other physical harm. *Bentz v. Hardy*, 638 F. App'x 535, 538 (7th Cir. 2016). Pervasive vermin infestations violate the Eighth Amendment.

In *Gray v. Hardy*, the Seventh Circuit found that where a prisoner saw cockroaches frequently, mice often were in his cell, and birds left droppings on the floor and walls as they flew around the prison, there was a sufficient basis to maintain an Eighth Amendment claim. 826 F.3d 1000, 1004-05 (7th Cir. 2016). The vermin infestation, coupled with a lack of cleaning supplies, deprived the plaintiff of his "basic human need of rudimentary sanitation in violation of the Eighth Amendment." *Id.* at 1005. Similarly, in *Silva v. Pfister*, the court found there was a sufficient basis to maintain an Eighth Amendment Claim where mice ran in and out of the plaintiff's cell and

cockroaches, spiders, and gnats crawled on his bed, belongings, and body. No. 18-cv-5214, 2021 WL 1103483, at *2, 6 (N.D. Ill. Mar. 23, 2021). And in *Perkins v. Williams*, the court found that where a prisoner at NRC experienced "mice and roaches in his cell on a daily basis, and observed mouse droppings in his cell a couple of times," there was a sufficient basis to maintain an Eighth Amendment claim. 15 C 6186, 2018 WL 453743, at *2, 6 (N.D. Ill. Jan. 17, 2018).

The vermin infestation at NRC has violated, and continues to violate, Plaintiffs' Eighth Amendment rights. Like the plaintiffs in *Gray*, *Perkins*, and *Silva*, Plaintiffs here endure pervasive and harmful vermin infestations. Plaintiffs are exposed to mice, birds, cockroaches, and various other insects on a regular basis. (Ex. 1 ¶¶ 23, 26; Ex. 2 ¶¶ 8-9; Ex. 3 ¶¶ 7-9, 15; Ex. 4 ¶¶ 14-15.) Insects and other vermin are often in Plaintiffs' cells and bite them while they sleep. (Ex. 1 ¶ 24; Ex. 2 ¶ 9; Ex. 3 ¶ 15; Ex. 4 ¶ 15.) Plaintiffs' food is not spared—dead insects and rodent feces are frequently seen in the food served to prisoners and mice often eat Plaintiffs' commissary food in their cells. (Ex. 1 ¶ 23; Ex. 3 ¶¶ 7-9, 15; Ex. 4 ¶ 15.) The vermin overrun common areas as well. (*See* Ex. 1 ¶ 26; Ex. 2 ¶ 8; Ex. 3 ¶ 25.) When prisoners shower, they must fend off attacks from biting insects. (Ex. 1 ¶ 26; Ex. 2 ¶ 17.) The vermin infestation at NRC is an objectively serious condition that has violated, and continues to violate, Plaintiffs' Eighth Amendment rights. *See Gray*, 826 F.3d at 1004-05.

> **b. Plaintiffs are Likely to Succeed in Demonstrating that the Deficient and Unsanitary Plumbing, Including Lack of Access to Clean Water, is Sufficiently Serious to Violate their Eighth Amendment Rights.**

Access to water for drinking and washing and working plumbing "have been found to be basic human necessities in the prison context." *Hicks v. Irvin*, No. 06 C 645, 2014 WL 1292541, at *6 (N.D. Ill. Mar. 31, 2014) (citing cases). Plaintiffs are also entitled to clean drinking water, which is "undoubtedly[] a necessity of life." *Williams v. Collins*, No. 14 C 5275, 2015 WL 4572311, at *3 (N.D. Ill. July 29, 2015) (quotations omitted). And unsanitary conditions from

11

broken plumbing "may rise to the level of an Eighth Amendment violation." *Downs v. Carter*, No. 13 C 3998, 2016 WL 1660491, at *7 (N.D. Ill. Apr. 27, 2016) (quotations omitted). Unsafe drinking water and malfunctioning plumbing, especially when it contributes to unsanitary conditions, violate the Eighth Amendment.

In *Robinson v. DeTella*, the court found that the conditions alleged—denial of cleaning supplies, broken plumbing, poor insulation, and generally filthy areas—were the "type of conditions found unconstitutional for decades." No. 95 C 4463, 1997 WL 53108, at *5 (N.D. Ill. Feb. 5, 1997). And in *Jackson v. Duckworth*, the Seventh Circuit found a plaintiff had demonstrated an objective Eighth Amendment violation where prisoners lived in filth, were exposed to vermin, dealt with leaking and inadequate plumbing, and lacked drinkable water. 955 F.2d 21, 21-22 (7th Cir. 1992). Such "barbarous" conditions were objectively cruel and unusual in violation of the Eighth Amendment. *Id.*

Like the plaintiffs in *Jackson*, Plaintiffs here have been deprived of the basic life necessity of clean drinking water. The water at NRC has been confirmed to be unsanitary, first containing dangerously high levels of both copper and lead, and later Legionella bacteria. (Ex. 5 at Exs. A, D, E.) Prison staff are even told not to drink the water. (Ex. 3 ¶ 30; Ex. 4 ¶ 20.) The water often makes Plaintiffs sick. (Ex. 1 ¶¶ 16-17, 19-21; Ex. 4 ¶ 18.) It has a foul odor and is often a tainted brown and yellow. (Ex. 1 ¶¶ 16-17, 19; Ex. 2 ¶¶ 4, 6; Ex. 3 ¶ 29; Ex. 4 ¶ 18.) NRC's water is unsuitable for any purpose, let alone drinking, and Plaintiffs' lack of access to clean drinking water and working plumbing is sufficiently serious to violate Plaintiffs' Eighth Amendment rights. *See Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (rejecting prison officials' claim of qualified immunity and holding that "[t]he rights that plaintiffs identify—to have enough water

12

for drinking and sanitation, and not to be forced to live surrounded by their own and others' excrement—are thus clearly established").

Further, Plaintiffs are subject to deficient plumbing that causes unsanitary living conditions, such as overflowing toilets that spill human waste onto cell floors and moldy sinks and toilets. (Ex. 1 ¶¶ 5, 12, 14-15; Ex. 2 ¶¶ 13-14; Ex. 3 ¶¶ 16, 19; Ex. 4 ¶¶ 17-18.) Plaintiffs must use their few belongings to clean up the sewage and mold because NRC does not regularly provide Plaintiffs cleaning supplies. (*See* Ex. 1 ¶¶ 7-11, 14-15; Ex. 3 ¶ 19.) The showers at NRC are also deficient: they are filthy, full of mold, and do not drain properly. (Ex. 1 ¶¶ 26, 31; Ex. 2 ¶ 17; Ex. 3 ¶ 24; Ex. 4 ¶ 17.) These living conditions—from unclean and unsafe drinking water to deficient and moldy plumbing, filthy showers, and sewage overflows—have deprived Plaintiffs of a sanitary living environment and violated their Eighth Amendment rights. *See Jackson*, 955 F.2d at 22.

> **c.  Plaintiffs are Likely to Succeed in Demonstrating that Their Lack of Access to Cleaning Supplies in an Unsanitary Environment is Sufficiently Serious to Violate Their Eighth Amendment Rights.**

Courts have "long recognized" that prisoners are entitled to adequate sanitization and personal hygiene. *Hardeman*, 933 F.3d at 820. To ensure a healthy environment, the state must provide prisoners adequate cleaning supplies. *See Gillis*, 468 F.3d at 493. "[H]it or miss access to cleaning supplies" is an objective Eighth Amendment violation. *See Perkins*, 2018 WL 453743, at \*6. And "irregular access" to cleaning supplies is particularly problematic in combination with a vermin infestation because it prevents prisoners from "cleaning up after the [vermin]" and could "attract[] more [vermin] to [their] cell[s]." *Id.* Defendants are required to provide Plaintiffs adequate cleaning supplies.

Plaintiffs face similar unconstitutional conditions here. NRC provides Plaintiffs cleaning supplies infrequently and irregularly. (Ex. 1 ¶¶ 8-9; Ex. 2 ¶¶ 13, 15-16; Ex. 3 ¶¶ 21-23; Ex. 4 ¶¶ 13-14.) The standard "cleaning supplies" usually consist of only a small amount of diluted

13

bleach—without any sponges, rags, or brushes—distributed approximately one time per month. (Ex. 1 ¶¶ 7-10; Ex. 2 ¶ 16; Ex. 3 ¶ 22; Ex. 4 ¶ 13.)  Consequently, Plaintiffs must resort to using their state-issued bar of soap, shampoo, and other personal belongings to clean their cells.  (Ex. 1 ¶ 11; Ex. 2 ¶ 16; Ex. 4 ¶ 14.)  This conduct denies Plaintiffs their right to a sanitary environment. *See Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (lack of sanitation items for six days in cell with blood and feces on wall and water on floor is sufficient to demonstrate an Eighth Amendment violation).

And where, as here, the state's failure to supply cleaning supplies is accompanied by other constitutional violations that result in filthy living conditions, such as the sewage overflows from malfunctioning plumbing, mold, and vermin infestation, the conditions—and hence, the Eighth Amendment violations—are exacerbated.  *See Gray*, 826 F.3d at 1005 ("[S]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so.") (quotations omitted).  On its own, and considered together with the other conditions at NRC, Plaintiffs' lack of cleaning supplies is sufficiently serious to deprive them of their Eighth Amendment rights.  *See Perkins*, 2018 WL 453743, at \*6.

### d. Plaintiffs are Likely to Succeed in Demonstrating that the Contaminated, Rotten, and Otherwise Nutritionally Deficient Food is Sufficiently Serious to Violate Their Eighth Amendment Rights.

The state must provide inmates a "healthy, habitable environment." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980)). A hallmark of a healthy, habitable environment is serving "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Id.*; *Byrd v. Hobart*, 761 F. App'x 621, 623 (7th Cir. 2019).  Serving prisoners spoiled, rotten, and nutritionally deficient food violates the Eighth Amendment because it presents an immediate danger to their health and well-being.

14

Courts in this Circuit have concluded that unsanitary kitchen conditions and spoiled or nutritionally inadequate food may violate the Eighth Amendment. In *Byrd v. Hobart*, the Seventh Circuit concluded that a cockroach-infested kitchen and cockroach and rodent feces on food were sufficiently serious conditions to maintain an Eighth Amendment claim because they increased the risk of future injury—namely, foodborne illness. 761 F. App'x at 622-624; *Holleman v. Aramark Corp.*, No. 1:11-cv-323-TWP-DKL, 2013 WL 5786869, at *5 (S.D. Ind. Oct. 28, 2013) (spoiled, uncooked, and small food portions that caused weight loss are sufficiently serious to maintain an Eighth Amendment claim).

Here, Plaintiffs' Eighth Amendment rights are violated because they are frequently served food that presents an immediate danger to their health and well-being. *See French*, 777 F.2d at 1255 (approving general directive requiring a prison kitchen to "be maintained to provide inmates with safe, sanitary, and nutritious food"). Plaintiffs' food is stored and prepared in an unsanitary environment, Plaintiffs are served undercooked, spoiled, and nutritionally deficient food, and Plaintiffs often feel hungry or sick after eating a meal. (Ex. 1 ¶ 32; Ex. 2 ¶¶ 10-11; Ex. 3 ¶¶ 5-9; 12-14; Ex. 4 ¶¶ 10-11.) Plaintiffs' Eighth Amendment rights are violated because they are served unsafe and nutritionally deficient food that is prepared in an unsanitary environment. *See id.*

### e. Plaintiffs are Likely to Succeed in Demonstrating that Their Lack of Out of Cell Time is Sufficiently Serious to Violate Their Eighth Amendment Rights.

Depriving a prisoner of the ability to exercise adequately inside his cell and of recreational opportunities outside his cell violates the Eighth Amendment. *See Delaney v. DeTella*, 256 F.3d 679, 684-85 (7th Cir. 2001); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996); *see also Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (upholding injunction requiring prison to provide each prisoner outdoor exercise when "many of the inmates were confined to their cells for as much as 23 ½ hours a day"). The Seventh Circuit has repeatedly held that "lack of exercise

15

may certainly rise to a constitutional violation," especially "[w]here movement is denied and muscles are allowed to atrophy [such that] the health of the individual is threatened[.]" *French*, 777 F.2d at 1255; *Antonelli*, 81 F.3d at 1432. Indeed, the Seventh Circuit has recognized that a prisoner's ability to exercise or "just to stand around" outside his cell is his "principal break from what otherwise is solitary confinement[.]" *Davenport v. DeRobertis*, 844 F.2d 1310, 1314 (7th Cir. 1988). Defendants have violated Plaintiffs' Eighth Amendment rights.

Courts frequently find conditions like those Plaintiffs endure unconstitutional. In *Davenport v. DeRobertis*, the Seventh Circuit affirmed an injunction requiring the state to provide prisoners in segregation units to receive at least five hours of out of cell exercise time per week, emphasizing the importance of "[t]he opportunity to exercise or even just to stand around, outside, in the company of other prisoners[.]" *Id.* at 1314-16. The Court rejected the notion that prisoners received sufficient exercise because their cells were large enough to engage in various forms of exercise, including push-ups, sit-ups, step-ups, and running in place. *Id.* at 1313. More recently, this Court concluded that a denial of out of cell exercise time for a prisoner at NRC—who otherwise "received almost no opportunity to move around at all"—was an objective Eighth Amendment violation. *Richard v. Pfister*, 483 F. Supp. 3d 532, 532, 540-41 (N.D. Ill. 2020).

Plaintiffs' situation at NRC is analogous and unconstitutional. Between November 2021 and February 2022, Plaintiffs did not receive any out of cell exercise time for over twelve weeks. (Ex. 1 ¶ 34; Ex. 2 ¶ 19; Ex. 3 ¶¶ 31-32; Ex. 4 ¶ 21.) After the complaint in this case was filed, Plaintiffs received a few days of out of cell exercise time, but after less than two weeks, all out of cell exercise time ceased once again. (Ex. 2 ¶ 19; Ex. 3 ¶ 32.) Except for the few showers they receive, Plaintiffs are confined to their cells for twenty-four hours a day, seven days a week. (Ex.

1 ¶¶ 29, 34; Ex. 2 ¶ 19; Ex. 3 ¶¶ 26, 31; Ex. 4 ¶ 21.)  Moreover, Plaintiffs cannot engage in meaningful exercise in their cells due to their size and unsanitary state.  (Ex. 1 ¶ 34; Ex. 3 ¶ 31.)

Plaintiffs' near total confinement to their cells is especially egregious considering the other unconstitutional conditions they must endure.  The denial of out of cell time, both alone and in combination with the other abhorrent conditions Plaintiffs suffer, violates the Eighth Amendment. *See Antonelli*, 81 F.3d 1422, 1430-32 (7th Cir. 1996).

### 2. Plaintiffs are Likely to Succeed in Demonstrating that Defendants Were Deliberately Indifferent to the Unconstitutional Conditions at NRC.

Prison officials act with deliberate indifference when they know that prisoners "face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." *Gillis*, 468 F.3d at 491 (quoting *Farmer*, 511 U.S. at 847).  When a condition is pervasive and obvious, courts may infer that a prison official has knowledge of the condition.  *Vinning-El*, 482 F.3d at 924-25; *Gomez v. Palmer*, 181 F. Supp. 3d 498, 507 (N.D. Ill. 2015) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (quoting *Farmer*, 511 U.S. at 842).  Where evidence establishes that problems in a prison are "systemic," "senior officials like the Warden of Stateville and the Acting Director of IDOC [can] be expected to have 'personal responsibility' for resolving the situation."  *Silva*, 2021 WL 1103483, at *7.  Defendants knew of the Plaintiffs' horrendous living conditions, including the serious harm that accompanies those conditions, and have failed, over many months, to take any steps to remedy those conditions.

### a. Defendants Had Knowledge of the Conditions at NRC.

*First*, Defendants have knowledge of the unconstitutional confinement conditions because they are systemic and their harm obvious.  As explained above, the conditions at NRC are pervasive and affect every aspect of NRC: Vermin infest the entire facility and bite Plaintiffs in

17

their cells and showers (Ex. 1 ¶¶ 23-24, 26; Ex. 2 ¶¶ 8-9, 17; Ex. 3 ¶¶ 7-9, 15; Ex. 4 ¶¶ 6, 15); the prison water system is contaminated and plumbing malfunctions throughout the facility (Ex. 1 ¶¶ 5, 12-16, 20; Ex. 2 ¶¶ 5, 13-14, 17; Ex. 3 ¶¶ 24, 28; Ex. 4 ¶¶ 17, 19; Ex. 5 at Exs. A, D, E); cleaning supplies are not distributed regularly in NRC, preventing Plaintiffs from cleaning their cells (Ex. 1 ¶¶ 8-9; Ex. 2 ¶¶ 13-16; Ex. 3 ¶¶ 21-23; Ex. 4 ¶¶ 13-14); the kitchen is unsanitary and the food served is rotten, spoiled, and lacks sufficient nutritional value (Ex. 1 ¶ 32; Ex. 2 ¶¶ 10-11; Ex. 3 ¶¶ 5-9, 12-14; Ex. 4 ¶¶ 6-11); and Plaintiffs are not permitted sufficient out of cell time. (Ex. 1 ¶ 34; Ex. 2 ¶ 19; Ex. 3 ¶ 31; Ex. 4 ¶ 21.) Each of these conditions is systemic and their harm obvious, and Defendants, as senior officials, can be expected to know of these conditions. *See Silva*, 2021 WL 1103483, at *7; *see also Gray*, 826 F.3d at 1008 ("[T]he risk of both physical and psychological harm [from vermin infestation and inadequate sanitation] is obvious—children are taught the importance of washing their hands before kindergarten, and the repulsive nature of cockroaches and mice is hardly subject to dispute."). These conditions would be apparent to the Defendants when they were present at the facilities as part of their job responsibilities, including, for example, when Plaintiffs have witnessed Defendant Gomez at NRC and in the kitchen. (Ex. 4 ¶ 34).

**Second**, Defendants have knowledge of the conditions because Plaintiffs have filed grievances related to each condition described above and because Plaintiffs complain about the conditions to NRC staff nearly every day. (Ex. 1 ¶¶ 7, 14-15, 38-47; Ex. 2 ¶¶ 6, 13, 15, 23-32 & at Group Ex. A; Ex. 3 ¶¶ 37-43 & at Group Ex. A; Ex. 4 ¶¶ 6, 9, 13, 19, 23-35 & at Group Ex. A.) *See Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) ("[R]equests for relief which have fallen on deaf ears may evidence deliberate indifference."). Plaintiffs' almost daily complaints are met with disdain—for example, staff refer to grievances as "bitch paper"—or are outright ignored.

(Ex. 1 ¶ 36; Ex. 2 ¶¶ 31, 33; Ex. 3 ¶ 43; Ex. 4 ¶¶ 30-33.)  Given the extensive and continuous complaints filed by Plaintiffs related to the conditions, Defendants cannot claim ignorance.  *See Dixon v. Godinez*, 114 F.3d at 645 (prison officials' contention of lack of knowledge "undercut[]" by evidence that many prisoners had experienced the alleged unconstitutional conditions and where the plaintiff had complained informally).

   ***Third***, reports published by third parties, such as the John Howard Association, have publicly detailed some of the dire conditions at NRC.  (*See generally* Ex. 5 at Ex. C.)  John Howard Association reports provide "ample notice" to the Warden and Director of IDOC as to the "sweeping deficiencies" in a prison.  *See Lyons v. Vergara*, Case No. 4 CV 9564, 2016 WL 4493455, at *7 (N.D. Ill. Aug. 26, 2016).  Furthermore, problems with the water supply at NRC have been made public.  (*See* Ex. 5 at Exs. D & E.)

### b. Defendants Failed to Take Reasonable Measures to Abate Substantial Risk of Serious Harm to Plaintiffs.

   To establish deliberate indifference, "it is enough to show that [each Defendant] 'acted or failed to act despite his knowledge of a substantial risk.'"  *Silva*, 2021 WL 1103483, at *6 (quoting *Farmer*, 511 U.S. at 842).  As set forth above, Defendants knew the systemic conditions at NRC created a substantial risk to Plaintiffs but did not act to abate those conditions.  Plaintiffs continue to be exposed to a rampant vermin infestation, lack clean drinking water and deal with broken plumbing, are not provided sufficient cleaning supplies to maintain a sanitary environment, are served rotten or nutritionally inadequate food prepared in an unsanitary environment, and are confined to their cells nearly twenty-four hours a day, seven days a week.  (*See* Ex. 1 ¶¶ 4-34; Ex. 2 ¶¶ 4-19; Ex. 3 ¶¶ 5-32; Ex. 4 ¶¶ 6-21.)  Defendants have acted with deliberate indifference.

   To the extent Defendants took any measures meant to protect Plaintiffs from the risk of substantial harm, like providing limited amounts of clean water on a handful of occasions, these

short-lived and insufficient measures are not reasonable to address the serious and ongoing conditions at NRC. Deliberate indifference may be inferred where prison officials "persist[] in an approach that does not make a dent in the problem[.]" *Gray*, 826 F.3d at 1009; *see Perkins*, 2018 WL 453743, at *4 ("[H]igh-ranking officials can be deliberately indifferent to an infestation even if . . . the prison has an extermination company visit the facility regularly."). Defendants have not taken reasonable measures to address the risk of serious harm to Plaintiffs caused by these various unconstitutional conditions of confinement. Plaintiffs, therefore, are likely to succeed in showing that Defendants were deliberately indifferent.

### B. Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief and Have No Adequate Remedy at Law.

The elements of irreparable harm and no adequate remedy at law "are often merged because they involve the same analysis." *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 991 (N.D. Ill. 2000) (quotations omitted); *see* Charles A. Wright et al., 11A *Federal Practice and Procedure* § 2944 (3d ed. April 2021 Update) ("Probably the most common method of demonstrating that there is no adequate legal remedy is by showing that plaintiff will suffer irreparable harm if the court does not intervene and prevent the impending injury."). Where, as here, the harm involves a deprivation of a constitutional right, "most courts hold that no further showing of irreparable injury is necessary." Charles A. Wright et al., 11A *Federal Practice and Procedure* § 2948.1 (3d ed. April 2021 Update). Plaintiffs face irreparable harm without a preliminary injunction and have no adequate remedy at law.

Plaintiffs' Eighth Amendment rights continue to be violated, and this ongoing violation is an irreparable harm sufficient to warrant preliminary injunctive relief. *Iglesias v. Federal Bureau of Prisons*, Case No. 19-CV-415-NJR, 2021 WL 6112790, at *26 (S.D. Ill. Dec. 27, 2021). Plaintiffs cannot be made whole through monetary relief at the end of trial and thus have no

20

adequate remedy at law.  *See Tay v. Dennison*, 457 F. Supp. 3d 657, 687-88 (S.D. Ill. 2020).

Moreover, given the transitory nature of NRC as a reception and classification facility, there is

also a sufficient likelihood that Plaintiffs may be housed at NRC again during their period of

incarceration and will repeatedly endure these constitutional violations.  Plaintiffs "need not wait"

for additional future harm to establish that they are entitled to an injunction.  *See id.* at 690.

Without a preliminary injunction, Plaintiffs will continue to endure unconstitutional

conditions of confinement that violate their Eighth Amendment rights.  *See Preston v. Thompson*,

589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation

constitutes proof of an irreparable harm[.]"); *see also Jones 'El v. Berge*, 164 F. Supp. 2d 1096,

1123 (W.D. Wisc. 2001) (finding irreparable harm and issuing preliminary injunction in conditions

of confinement case because "the violation of a fundamental constitutional right constitutes

irreparable harm, even if temporary") (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "[O]nly

injunctive relief will alleviate the risks at which [Plaintiffs] are placed by the defendants' acts and

omissions."  *Flynn v. Doyle*, 630 F. Supp. 2d 987, 992 (E.D. Wisc. 2009).  A preliminary injunction

is both appropriate and necessary.

### C.  The Balance of Equities Favors Plaintiffs.

The balance of equities favors Plaintiffs because an injunction would do little more than

require Defendants to do their jobs and not violate Plaintiffs' constitutional rights.  *Tay*, 457 F.

Supp. 3d. at 688; *see Hoskins v. Dilday*, No. 16-CR-334-MJR-SCW, 2017 WL 951410, at *6-7

(S.D. Ill. Mar. 10, 2017).  Moreover, the severe harm to Plaintiffs from the atrocious conditions at

NRC far outweighs any concern about costs to comply with an injunction.  *See Preston*, 589 F.2d

at 303 ("The defendants cannot rely on fiscal and administrative difficulties to frustrate a district

court's mandate to remedy constitutional violations.").  Plaintiffs are entitled to a clean, healthy

environment and safe, nutritious food.

21

**D. Public Interest Favors Issuing an Injunction.**

The public interest also favors injunctive relief. Protecting constitutional rights serves the public interest. *See Jones 'El*, 164 F. Supp. 2d at 1125 ("[T]he public interest will be served by protecting the Eighth Amendment rights of inmates[.]"); *Tay*, 457 F. Supp. 3d at 689 ("[I]t is in the public interest to ensure that Plaintiff's constitutional rights are not violated by correctional officers."); *Foster v. Ghosh*, 4 F. Supp. 3d 974, 984 (N.D. Ill. 2013) ("Because Illinois taxpayers have a vested interest in ensuring that the constitutional rights of its citizens are protected," injunctive relief "does not harm the public interest"); *Hoskins*, 2017 WL 951410, at *7 ("While the public interest is served by ensuring public safety, this Court must consider that the public has a similarly strong interest in preventing constitutional violations.").

**E. The Court Should Waive Bond.**

Courts have the power to waive bond in "appropriate circumstances[.]" *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977). Indeed, "courts have declined to require plaintiffs to post a bond in cases involving constitutional rights." *Smith v. Bd. of Election Comm'rs for City of Chicago*, 591 F. Supp. 70, 71 (N.D. Ill. 1984). In determining whether to waive bond, courts consider "the possible loss to the enjoined party, the hardship a bond would impose on the applicant, and the impact of a bond on the enforcement of federal rights." *Id.* at 72. Bond should be waived in this case because Plaintiffs' requested preliminary relief is in the public interest and is necessary to vindicate their constitutional rights. *See id.*; *see also Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009) ("Waiving the bond requirement [for a preliminary injunction] is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right."). Because the injunction sought here merely

22

seeks to compel Defendants to comply with federal law and protect Plaintiffs' constitutional rights, no bond should be required.[11]

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Preliminary Injunction and order Defendants to (1) take all necessary steps to eliminate the vermin infestation at NRC, including, but not limited to, taking action to eliminate the current infestation and prevent all future infestations; (2) take all necessary steps to repair and maintain the plumbing system at NRC, including ensuring that prisoners have clean and safe drinking water, that there are no sewage overflows, and that drains are in proper working order; (3) provide all prisoners at least 64 (sixty-four) ounces of clean drinking water per day, through water bottles or other filtered water, until such time that the plumbing system can adequately supply clean and safe drinking water; (4) provide prisoners with cleaning supplies at least one time per week, with additional cleaning supplies made available to prisoners as needed; (5) ensure that food provided to prisoners is safe and of adequate nutritional value, including, but not limited to, serving only food that is not rotten, spoiled, and/or expired, ensuring proper sanitation in food preparation and storage areas, preparing food to an adequate temperature, and providing adequate portion sizes; (6) take all necessary steps to ensure that prisoners' common spaces (*e.g.*, showers) are free of mold and are sanitary; and (7) provide at least twenty hours out of cell time for prisoners held at NRC for over thirty days and at least ten hours of out of cell time for prisoners held for

---

[11] In addition to the general preliminary injunction requirements that Plaintiffs have satisfied, the Prison Litigation Reform Act requires that preliminary injunctive relief be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The relief requested in this case—requiring Defendants to ensure NRC maintains basic standards of living—tracks the constitutional violations Plaintiffs have suffered and requires only basic actions that will remedy Plaintiffs' constitutional violations. Such relief is narrowly tailored to remedy the specific constitutional violations that Plaintiffs have suffered.

fewer than thirty days, including, in either case, a minimum of five hours of out of cell exercise time per week.


Dated: May 24, 2022                          Respectfully submitted,

                                             PLAINTIFFS GREGORY SHIPP, CHRISTOPHER
                                             DIXON, ERIC JOHNSON, and ZACHARY
                                             JOHNSON

                                             By: */s/ Benjamin J. Bradford*
                                                  Attorney for Plaintiffs

                                             Terri L. Mascherin (ARDC 6187735)
                                             Benjamin J. Bradford (ARDC 6285800)
                                             JENNER & BLOCK LLP
                                             353 North Clark Street
                                             Chicago, Illinois 60654
                                             312-222-9350
                                             tmascherin@jenner.com
                                             bbradford@jenner.com

                                             Alan Mills (ARDC 6181054)
                                             Nicole Schult (ARDC 6306949)
                                             UPTOWN PEOPLE'S LAW CENTER
                                             4413 N. Sheridan
                                             Chicago, IL 60640
                                             773-769-1411
                                             alan@uplcchicago.org
                                             nicole@uplcchicago.org

                                             *Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I, Lindsey A. Lusk, an attorney, certify that on May 24, 2022, I caused the foregoing

document to be electronically filed with the Clerk of the Court using the CM/ECF system, which

will then send a Notice of Electronic Filing to all counsel of record.


/s/ *Lindsey A. Lusk*

Lindsey A. Lusk