**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY SHIPP, CHRISTOPHER DIXON, ERIC JOHNSON, and ZACHARY JOHNSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID GOMEZ, as Warden of Northern Reception and Classification Center, and ROB JEFFREYS, as Director of the Northern Reception and Classification Center,<br><br>Defendants. | ) | Civil Action No. 1:22-cv-00888<br><br>Hon. Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION**

Plaintiffs are former residents at the Northern Reception and Classification Center ("NRC"), which is currently being operated under unconstitutional conditions. Defendants have failed to produce documents relevant to the claims and defenses in this action and have hampered Plaintiffs' ability to pursue their claims. Plaintiffs respectfully request that this Court order Defendants to produce documents in response to Plaintiffs' Requests for Production Nos. 10, 19, 22, 25, 26, 27, 29, 35, 42, and 43.

## FACTUAL BACKGROUND

On February 17, 2022,[1] Plaintiffs filed this putative class action to remedy the unconstitutional confinement conditions at NRC. (Dkt. 1.) Plaintiffs allege that Defendants have violated Plaintiffs' Eighth Amendment rights by allowing these conditions—which include vermin

[1] Plaintiffs filed an amended complaint on April 7, 2022. (Dkt. 18)

infestation, unsanitary plumbing, rotten and nutritionally deficient food, lack of access to cleaning supplies, and lack of out-of-cell time—to persist without abatement. (*See generally* Dkt. 18.) On June 2, 2022, the Court adopted a partial case schedule. (Dkt. 46.) Plaintiffs have since served two sets of requests for production of documents: their first set on June 2, 2022 ("First RFPs"), (*see* Ex. 1, Decl. of Lindsey Lusk in Supp. of Pl.'s Mot. to Compel, at Ex. A), and their second set on November 17, 2022. ("Second RFPs"). (*Id.* at Ex. C.) Defendants have delayed or flatly refused to produce documents responsive to several of Plaintiffs' requests for production.

Defendants' pattern of delay has been a consistent feature of this litigation. Although Plaintiffs issued their First RFPs over a year ago, Defendants have yet to adequately respond. Defendants have failed to provide a sufficient response to Request No. 10, which seeks grievances, complaints, and other records (*e.g.*, responses to those grievances and complaints) relating to the conditions that Plaintiffs allege are unconstitutional. (*See id.* at Ex. A at 8–9.) In response to Request No. 10, Defendants initially produced only monthly inmate grievance report summaries. (*Id.* ¶ 4.) Those summaries described the volume of grievances received at both NRC and neighboring Stateville Correctional Facility—without distinguishing between grievances received at either location—and described the nature of the underlying grievance only in general terms (*e.g.*, "Dietary: Food Quality/Quantity"). (*Id.*) Although the summaries generally noted whether grievances were "affirmed" or "denied," the summaries did not contain any additional information about the specific conditions that were the subject of the grievances or the responses to the grievances. (*See id.*) Only on June 2, 2023 did Defendants produce grievance logs specific to NRC. (*Id.* ¶ 24.) Those logs identified grievances filed by prisoners housed at NRC and detailed when a grievance was received, relevant dates related to the handling of the grievance, and the general disposition of the grievance (among other things). (*Id.*) But, like the grievance report summaries

Defendants previously produced, these logs did not describe the specific nature of any given grievance, instead describing the grievances in general terms, like "Conditions." (*Id.*) Defendants have yet to produce either (i) the underlying grievances relevant to the unconstitutional conditions alleged—which presumably detail those conditions—or (ii) records sufficient to show Defendants' responses to those grievances. These records are critical to Plaintiffs' claims.

Defendants' responses to Plaintiffs' Second RFPs are also deficient. Defendants produced a small number of documents in response to Plaintiffs' Second RFPs on December 16, 2022—nine days after the response deadline. (*Id.* ¶ 8.) Defendants' counsel requested a second extension of time to produce the full set of responsive documents. (*Id.*) Plaintiffs' counsel agreed. (*Id.*) On December 23, 2022, Defendants made another incomplete production of documents. (*Id.* ¶ 9.) Over the next several months, Plaintiffs' counsel contacted Defendants' counsel several times seeking the production of outstanding documents responsive to both sets of RFPs. (*Id.* ¶¶ 10–13.) On March 14, 2023, Plaintiffs' counsel sent a letter to Defendants' counsel outlining deficiencies in Defendants' productions. (*Id.* ¶ 17, Ex. H.) In addition to Request No. 10, Plaintiffs raised concerns with Defendants' failure to produce documents in response to several requests in the Second RFPs, including:

- Request No. 19, which seeks documents related to prisoners held at NRC and their intake and transfer dates;
- Request Nos. 22 and 43, which seek documents related to tours, inspections, and audits of NRC conducted by Defendants and third parties;
- Request Nos. 25, 26, and 27, which seek blueprints, standard operating procedures, and other similar documents related to NRC's interior and plumbing;
- Request Nos. 29 and 35, which seek documents related to NRC's food storage and service;
- Request No. 42, which seeks documents relating to the distribution of cleaning supplies to prisoners at NRC.

On April 13, 2023, counsel for the parties met and conferred to discuss the items raised in Plaintiffs' March 14 letter. (*Id.* ¶ 19.) Defendants' counsel represented that she would consider Plaintiffs' March 14 letter and determine whether additional documents could be produced. (*Id.*) On April 24, 2023, Plaintiffs' counsel requested—among other items—a substantive response to Plaintiffs' March 14 letter. (*Id.* ¶ 20.) Counsel for the parties agreed to meet on May 1, 2023, to discuss the outstanding discovery issues and joint status report. (*Id.* ¶ 21.) During the May 1 meet and confer, counsel for Plaintiffs requested a formal response to Plaintiffs' March 14 letter. (*Id.*) Counsel for Defendants indicated that she anticipated Defendants could supplement their production by May 12, 2023. (*Id.*)

On May 9, 2023, the Court entered a scheduling order adopting Defendants' proposed discovery schedule, which required Defendants to "produce all outstanding documents responsive to Plaintiffs' Requests for Production and respond to Plaintiffs' Discovery Deficiency Letter by 6/2/23." (Dkt. 70.) On June 2, 2023, Defendants' counsel produced certain documents in "supplement to previously produced responses" and stated that additional documents "should be ready for production on Monday [June 5] or Tuesday [June 6]." (*Id.* at Ex. K at 2.) Defendants made an additional production of documents on Monday, June 5. (*Id.* ¶ 25.) Defendants' June 2 and June 5 productions did not address Defendants' deficient responses to Request for Production Nos. 10, 19, 22, 25, 26, 27, 29, 35, 42, and 43. Despite being ordered to do so, Defendants did not provide a response to Plaintiffs' March 14 letter. (*Id.* ¶ 24; Dkt. 70.) Defendants also have not supplemented their written response to Plaintiffs' Requests for Production.

Plaintiffs have attempted in good faith to resolve their discovery disputes with Defendants over the course of many months, but Defendants have either refused or simply failed to produce documents that are plainly relevant to this action. Plaintiffs now seek this Court's intervention.

## ARGUMENT

### I. The Court Should Order Defendants To Produce Documents In Response To Plaintiffs' Requests.

Rule 26 permits broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information is relevant if it "bears on" or "reasonably could lead to other matter that could bear on" any material facts or issues in the action. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A party may move to compel where the opposing party fails to respond to discovery requests and "the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The party resisting discovery bears the burden to "show why a particular discovery request is improper." *Parvati Corp v. City of Oak Forest*, No. 08 C 702, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010) (internal quotations and citation omitted). "As with all discovery matters, district courts have broad discretion in determining motions to compel." *Id.*

The discovery requests on which Plaintiffs now move to compel are tailored to the central issues in this litigation: the conditions at NRC, Defendants' awareness of those conditions, and Defendants' efforts—if any—to address those conditions. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (plaintiff must show conditions of confinement resulted in the "denial of the minimal civilized measure of life's necessities" and that a prison official is "deliberately indifferent to this state of affairs") (internal quotations and citation omitted). In response to Plaintiffs' discovery requests and as described in more detail below, Defendants have improperly offered a "reflexive invocation" of the "often abused litany" that Plaintiffs' requests are overly broad, unduly burdensome, and not relevant. *See United Auto Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) (internal quotations and citation omitted). Defendants'

rote objections ignore the salient issues in this action and seek to prevent Plaintiffs from obtaining information directly related to Plaintiffs' allegations that the conditions at NRC violate their constitutional rights. *See Doe v. Loyola University Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2–3 (N.D. Ill. Jan. 24, 2020) (noting that the concept of relevance is "construed broadly," and reasoning that discovery is appropriate where it bears on allegations in a complaint).

Defendants' objections should be rejected, and this Court should put an end to Defendants' delay, grant Plaintiffs' motion to compel, and order Defendants to produce documents in response to Plaintiffs' Requests for Production Nos. 10, 19, 22, 25, 26, 27, 29, 35, 42, and 43 by a date certain. *See Greene v. Consumer Advoc. Found. Serv.*, No. 08 C 6165, 2010 WL 11712803, at *1 (N.D. Ill. Feb. 3, 2010) (granting in part a motion to compel, noting "the pattern of minimal or no responses to discovery requests from Defendants, necessitating motions to compel by Plaintiffs, [that] is unnecessarily delaying the prosecution of this case and increasing the costs to the parties and to the court system").

### A. Defendants Should be Ordered to Produce Documents Related To Prisoner Grievances At NRC In Response To Request No. 10.

Request No. 10 seeks complaints, grievances, and other documents (including responses to complaints and grievances) related to the conditions at NRC that Plaintiffs allege are unconstitutional. (*See* Ex. 1 at Ex. A at 8–9.) Defendants object that this request is unduly burdensome because grievances are "maintained in the master files of individuals in custody" that "travel[] with the individual in custody" and are "not kept in a central database." (*See id.* at Ex. B at 6.)

Defendants have yet to produce the actual grievance forms or responses to those grievances. To date, Defendants have produced only summaries and logs which do not describe in any detail either the nature of the underlying grievances or what action Defendants took in response

to each grievance. (*Id.* ¶¶ 4, 24.) In an effort to obtain at least some responsive grievance forms and responses, on June 7, 2023, Plaintiffs' counsel identified a specific set of grievances listed in the "grievance logs" produced on June 2, 2023, and asked Defendants' counsel to produce all documents relating to those grievances. (*See id.* ¶ 26, Ex. K at 1.) As of the time of filing, Defendants' counsel has not responded. (*See id.* ¶¶ 26, 27.)

Defendants should be ordered to produce grievances and responses to grievances that relate to the conditions at the NRC that are the subject of this case. These documents are relevant to this action because they are likely to establish that the conditions Plaintiffs allege to be unconstitutional are "long-standing, pervasive, [or] well documented" and that they were "expressly noted by prison officials in the past." *See Smith v. Sternes*, No. 02 C 50178, 2003 WL 21418356, at *4 (N.D. Ill. June 18, 2003) (ordering production of reports, grievances, and other similar documents from a specific IDOC facility related to sexual assault of inmates); *Gray*, 826 F.3d at 1008 (noting that grievance and response signed by prison warden "demonstrate[d] the prison and warden's knowledge of the conditions about which [the plaintiff] [was] complaining"). While the documents produced by Defendants to date vaguely identify the subject matter of grievances, the logs do not describe the specific issues raised in the grievance. Plaintiffs need the actual grievance documents submitted by prisoners housed at NRC and the responses to those grievances to prove the specific conditions of which Defendants had knowledge. *See Sternes*, 2003 WL 21418356, at *4.

Plaintiffs have attempted to minimize the burden on Defendants by identifying specific grievances for which Plaintiffs seek records (*e.g.*, those related to the conditions at issue in Plaintiffs' complaint). (*See* Ex. 1 ¶ 26.) Defendants' assertion of burden pales in comparison to the relevance of the information sought, particularly given that Defendants and IDOC have exclusive access to the information requested. Fed. R. Civ. P. 26(b)(1) (proportionality assessed by

considering, *inter alia*, the importance of the issues and the parties' access to information). This Court should order Defendants to produce or make available for inspection the underlying grievances and responses that Plaintiffs have identified.

### B. Defendants Should be Ordered to Produce Documents Related to Prisoner Intake and Transfer at NRC in Response to Request No. 19.

Request No. 19 seeks a spreadsheet or similar document identifying the prisoners held at NRC after May 1, 2021, including their intake and transfer dates. (Ex. 1 at Ex. C at 5.) Defendants object that no single document containing this information exists and that it is unduly burdensome to produce this information because of "an inherent limitation in the program used by [IDOC]." (*Id.* at Ex. E at 1.) It is implausible that IDOC would not track—and be able to produce—information related to prisoner intake and transfer dates at NRC. Indeed, during the April 13 meet and confer, Defendants' counsel suggested that the information sought by this request may exist in multiple documents. (*Id.* ¶ 19.) Plaintiffs' counsel explained that Plaintiffs are interested in documents responsive to this request regardless of form, (*id.*), yet Defendants still have failed to produce any documents responsive to this request.

These documents are necessary to identify potential class members and to show the length of time class members spend at the NRC. Plaintiffs allege that NRC is ill-equipped to hold prisoners for extended periods of time but that prisoners remain in NRC for months. (Dkt. 18 ¶ 3.) The length of time a prisoner experiences an adverse condition is a relevant factor in an Eighth Amendment analysis. *Gray*, 826 F.3d at 1005 ("An adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impressible if it were only a short-term problem."). Defendants have not explained why it would be unduly burdensome to locate and produce documents identifying NRC prisoners and their intake and transfer dates, and their boilerplate objections in response to this request are

"tantamount to not making any objection at all." *Veluchamy*, 2010 WL 749980, at *5 (internal quotations and citation omitted). Defendants cannot show that this request is improper, particularly given the relevance of the information sought. *See* Fed. R. Civ. P. 26(b)(1) (proportionality is to be assessed by, among other things, the importance of the issues and importance of the discovery sought). This Court should order Defendants to produce documents in response to this request.

### C. Defendants Should be Ordered to Produce Documents Related to Tours and Inspections at NRC in Response to Request Nos. 22 and 43.

Request No. 22 seeks documents related to any tours or inspections of NRC performed by Defendants or third parties for official purposes. (Ex. 1 at Ex. C at 5.) Request No. 43 seeks documents related to internal and third-party audit reports related to NRC and its operations. (*Id.* at Ex. C at 8.) To address Defendants' objection due to burden, in their March 14 letter, Plaintiffs agreed to narrow the scope of Request No. 43 to reports concerning the "physical conditions at NRC," the "provision of food, beverages, and cleaning supplies to prisoners," the "lack of out of cell time for prisoners" and the "handling of prisoner grievances." (*Id.* at Ex. H at 7.) Defendants object—without explanation—that these requests are overly broad, not proportional to the needs of the case, and seek irrelevant information. (*Id.* at Ex. E at 2, 8) Defendants also object that Request No. 22 seeks privileged information. (*Id.* at Ex. E at 2.) Defendants' boilerplate objections should be overruled.

Defendants' awareness of the conditions at NRC—including through tours or third-party reports—is relevant to whether Defendants acted with deliberate indifference. *See Smith v. Portwood*, No. 19 C 5329, 2021 WL 4318076, at *2 (N.D. Ill. Sept. 23, 2021) (ordering production of disciplinary and internal investigation records in Eighth Amendment and retaliation case because they "may contain statements . . . from Defendants," which would be "material to Plaintiff's claim[] for deliberate indifference"); *Lyons v. Vergara*, No. 14 CV 9565, 2016 WL

4493455, at *7 (N.D. Ill. Aug. 26, 2016) (observing that John Howard Association report and grievances would provide "ample notice of sweeping deficiencies" in prison living units); *Fontano v. Godinez*, No. 12-CV-3042, 2013 WL 3712406, at *2 (C.D. Ill. July 12, 2013) (ordering production of documents related to IDOC's compliance with the Prison Rape Elimination Act, because such information would be "relevant to the pervasiveness of sexual assault . . . which could be relevant to the deliberate indifference inquiry"). Documents related to internal and third-party audit reports related to NRC and its operations are likewise relevant to Defendants' knowledge of the conditions and whether they acted to rectify the conditions. *See Portwood*, 2021 WL 4318076, at *2; *Lyons*, 2016 WL 4493455, at *7; *Fontano*, 2013 WL 3712406, at *2.

Defendants cannot avoid this discovery by claiming that a request seeks privileged information. To the extent documents sought by Plaintiffs are privileged, Defendants must (1) expressly make the privilege claim and (2) provide a log describing the documents in order to permit Plaintiffs to assess the claim. *See* Fed. R. Civ. P. 26(b)(5). Defendants have done neither here.

Accordingly, this Court should order Defendants to produce documents in response to Request Nos. 22 and 43, as narrowed in Plaintiffs' March 14, 2023, letter.

### D. Defendants Should be Ordered to Produce Documents Related to NRC's Interior and Plumbing in Response to Request Nos. 25, 26, and 27.

Request Nos. 25, 26, and 27 seek documents related to NRC's interior and plumbing: Request No. 25 seeks blueprints, technical specifications, and other similar documents related to NRC's plumbing and water supply; Request No. 26 seeks operations, maintenance plans, and standard operating procedures relating to NRC's plumbing and water supply; and Request No. 27 seeks blueprints, drawings, and other similar documents related to NRC's interior. (*See* Ex. 1 at Ex. C at 6.) Defendants originally objected that producing responsive documents would "place[]

the safety and security of the facility, staff, administration, and the individuals in custody at risk," although they do not explain how. (*Id.* at Ex. E at 3–4.) Defendants also objected—without explanation—that Request Nos. 25 and 27 are overly broad and not proportional to the needs of the case. (*Id.*) On May 31, 2023, Defendants' counsel stated that she expected to produce certain blueprints to Plaintiffs on June 12, 2023, ten days after the Court's production deadline. (*Id.* ¶ 23.) As of the filing of this motion, no such documents have been produced. (*See id.* ¶¶ 23, 27.) On June 2, 2022, Defendants produced what appears to be a single standard operating procedure related to NRC's water supply responsive to Request No. 26. (*Id.* ¶ 24.)

Defendants do not challenge the relevance of the documents sought in these requests, and their cursory overbreadth objections should be overruled. *See Veluchamy*, 2010 WL 749980, at *5 (boilerplate objections are to be rejected). Defendants' perfunctory safety objections also deserve little weight, given that the Agreed Protective Order in place since September 2022 includes an "ATTORNEY EYES ONLY" (AEO) provision that applies to "information that could compromise the safety and security of Illinois Department of Corrections operations." (Dkt. 54 at 2.) Under the Agreed Protective Order, disclosure of information designated as AEO is limited both in terms of the individual to whom disclosure can be made and the circumstances of the disclosure. (*Id.* at 6–7.) "[U]nder no circumstances" can AEO-designated information be disclosed to a client, nor can "*any* Confidential Information be disseminated by any person to any current or former inmate of the Illinois Department of Corrections" other than as provided in the order. (*Id.* at 7–8.) To the extent documents responsive to these requests implicate safety and security concerns, Defendants can designate them as Attorneys' Eyes Only. Defendants should not be permitted to withhold documents based on safety and security concerns where the parties agreed upon a specific AEO designation to address these very concerns.

Accordingly, Defendants should be ordered to produce documents in response to Request Nos. 25, 26, and 27.

**E. Defendants Should be Ordered to Produce Documents Related to Food Service at NRC in Response to Request Nos. 29 and 35.**

Request Nos. 29 and 35 seek documents related to food service at NRC. Request No. 29 seeks "itemized lists of food and beverages purchased, documentation of quantities ordered, Food Vendor invoices and contracts, records of receipt, acceptance, inspection, and rejection of orders, and documentation of actual food and beverage service." (Ex. 1 at Ex. C at 7.) Request No. 35 seeks documents related to an administrative directive concerning food safety and sanitation. (*Id.*) In their March 14, 2023, letter Plaintiffs clarified that they seek two specific categories of documents in response to Request No. 29: (1) nutritional analyses related to Defendants' third-party dietician's annual menu evaluations; and (2) internal quarterly menu evaluation memoranda that Defendants are required to generate or maintain under Administrative Directive No. 05.02.145. (*Id.* at Ex. H at 5.) Defendants object that these requests are overly broad and not proportional to the needs of the case, and also object that the information sought by Request No. 35 is irrelevant. (*Id.* at Ex. E at 4, 6.)

Defendants' superficial objections cannot satisfy their burden, particularly in light of the Plaintiffs' March 14 letter narrowing the scope of the request. *See H. Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974, 2020 WL 3578026, at *4 (N.D. Ill. July 1, 2020) ("[M]erely to insist that the concept of proportionality is violated in a given discovery will run afoul of the religiously followed rule that boilerplate, unexplained objections are essentially entitled to no weight."); *Veluchamy*, 2010 WL 749980, at *5. Accordingly, these objections should be overruled.

Defendants' relevance objection also should be rejected. Plaintiffs allege that they were served spoiled and rotten food prepared and served in an unsanitary environment. (*See* Dkt. 18 ¶¶

50–63.) Documents concerning the food that is served at the NRC, food safety, and sanitation procedures therefore are directly relevant to the complaint and are discoverable. *See Loyola University Chicago*, 2020 WL 406771, at *2 (ordering production of documents that "appear[ed] directly relevant to the allegations contained in [the plaintiff's] complaint"); *see also Byrd v. Hobart*, 761 F. App'x 621, 624 (7th Cir. 2019) (reasoning that a "reasonable jury could conclude that the risk of harm" from consuming food contaminated with "mice droppings, mice, and cockroaches" is "both substantial and obvious"); *Gray*, 826 F.3d at 1005 (describing elements of Eighth Amendment conditions of confinement claim).

Defendants cannot show that Request Nos. 29 and 35 are improper, and the Court should order Defendants to produce documents in response to these requests.

### F. Defendants Should be Ordered to Produce Documents Related to the Distribution of Cleaning Supplies at NRC in Response to Request No. 42.

Request No. 42 seeks documents related to distribution of cleaning supplies and prisoners' access to cleaning supplies at NRC. (Ex. 1 at Ex. C at 8.) Defendants' sole objection is that this request is overly broad and not proportional to the needs of the case. (*Id.* at Ex. E at 8.) Defendants have not produced any documents in response to this request.

Defendants' boilerplate objections deserve no weight. *See Veluchamy*, 2010 WL 749980, at *5. Plaintiffs have alleged that their Eighth Amendment rights have been violated in part due to unsanitary conditions at NRC created by Defendants' failure to provide cleaning supplies. (Dkt. 18 ¶¶ 64–70.) Information about the provision of cleaning supplies is therefore directly relevant to Plaintiffs' allegations. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (lack of sanitation can constitute Eighth Amendment violation). Even if Plaintiffs had not alleged this specific Eighth Amendment violation, documents about cleaning supplies would be relevant and discoverable because multiple conditions—*e.g.*, vermin infestation *and* lack of cleaning supplies—may together

amount to a constitutional violation. *See id.* (explaining that conditions of confinement may "establish an Eighth Amendment violation in combination," which is true where the "deprivations have a mutually enforcing effect"); *Perkins v. Williams*, No. 15 C 6186, 2018 WL 453743, at *6 (N.D. Ill. Jan. 17, 2018) ("irregular access" to cleaning supplies "may have prevented [prisoner] from cleaning up after the pests and even attracted more pests to his cell"). Defendants—who have significantly greater (if not exclusive) access to the information sought—cannot avoid discovery by "merely [] insist[ing] that the concept of proportionality is violated," especially in light of the relevance of this request. *See H. Guys, LLC*, 2020 WL 3578026, at *4; *Gutierrez v. Baldwin*, No. 18 CV 1478, 2022 WL 1658782, at *2 (S.D. Ill. May 25, 2022) (ordering production of cellhouse work orders and shift reports because they "clearly relate to Plaintiff's unconstitutional conditions of confinement claim and may go to the issue of notice to Defendants of the relevant matters concerning distribution of cleaning supplies and complaints of cell conditions"); *see also* Fed. R. Civ. P. 26(b)(1) (describing factors to assess when considering proportionality). This Court should reject Defendants' conclusory objections and order Defendants to produce documents.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to produce all documents responsive to Plaintiffs' Requests for Production Nos. 10, 19, 22, 25, 26, 27, 29, 35, 42, and 43, and that the Court set a deadline for Defendants to complete that production.

Dated: June 12, 2023

Respectfully Submitted,

/s/ *Terri Lynn Mascherin*
*Attorneys for Plaintiffs*

Terri Lynn Mascherin
Benjamin J. Bradford
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
(312) 840-7315
tmascherin@jenner.com
bbradford@jenner.com

Alan S. Mills
Nicole Rae Schult
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan Road
Chicago, IL 60646
(773) 769-1411
alan@uplcchicago.org
nicole@uplcchicago.org

## CERTIFICATE OF SERVICE

I, Terri Lynn Mascherin, an attorney, certify that on June 12, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ Terri Lynn Mascherin*
Terri Lynn Mascherin