## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GREGORY SHIPP; CHRISTOPHER )
DIXON; ZACHARY JOHNSON; )
LARNELL BROWN; and ERIC )
TYLER, on their own behalf and on )
behalf of all others similarly )
situated, )
                                 )        No. 22 C 888
            Plaintiffs, )
                                 )
      v. )
                                   )
CHARLES TRUITT, as Warden of )       Magistrate Judge
the Northern Reception and )       Maria Valdez
Classification Center; and LATOYA )
HUGHES, as Acting Director of the )
Northern Reception and )
Classification Center, )
                                 )
          Defendants. )
                                 )

## MEMORANDUM OPINION AND ORDER

The Named Plaintiffs are or were prisoners in the custody of the Illinois

Department of Corrections ("IDOC") who were housed at the Northern Reception

and Classification Center ("NRC") at various times between 2021 and 2024. They

brought this suit against the Warden of the NRC and the Acting Director of IDOC,

alleging their Eighth Amendment rights were violated when they were forced to

suffer deplorable and unconstitutional conditions of confinement, including vermin

infestation, contaminated drinking water, malfunctioning and unsafe plumbing,

lack of cleaning supplies, nutritionally deficient and spoiled food, and insufficient

out-of-cell time. They have moved to certify the following class under Federal Rule of Civil Procedure 23(b)(2):

> All individuals incarcerated at the NRC at any time since May 1, 2021, and all individuals who will be housed at the NRC in the future.

Plaintiffs seek (1) a declaration that Defendants' acts and omissions violated Plaintiffs' rights and (2) a permanent injunction prohibiting Defendants from allowing the unconstitutional conditions to exist. For the reasons that follow, Plaintiffs' Motion for Class Certification [Doc. No. 174] is granted in part and denied in part.

## DISCUSSION

## I.    LEGAL STANDARDS

A plaintiff seeking to certify a class must first show that the putative class meets the four requirements of Federal Rule of Civil Procedure 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.") (internal quotations and citations omitted). The burden is on the movant to show that the necessary criteria have been met: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must

affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350-51 ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'") (emphasis in original) (citations omitted). Because Plaintiffs seek certification under Rule 23(b)(2), they must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Defendants do not dispute that the proposed class meets the numerosity requirement, nor do they challenge the adequacy of counsel or the class representatives with respect to class as it is currently defined. They also acknowledge that commonality, typicality, and the Rule 23(b)(2) requirements are met for Plaintiffs' allegations of food contamination in the kitchen and contamination of the water supply. They challenge certification on all other claims on the basis of commonality, typicality, and the propriety of a Rule 23(b)(2) class.

The commonality rule "require[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart*, 564 U.S. at 349 (quoting Fed. R. Civ. P. 23(a)(2)); *see Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.").

To show commonality, a class of plaintiffs must do more than pose common questions – they must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 350 ("'What matters to class certification . . . is not the raising of common "questions" – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'") (emphasis in original) (internal quotations and citations omitted).

A group of plaintiffs thus does not establish class commonality merely by alleging a violation of the same constitutional provision: "Their claims must depend upon a common contention . . . . of such a nature that it is capable of classwide resolution – which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016) ("In the wake of *Wal-Mart*, we have made clear that a prospective class must articulate at least one common question that will actually advance all of the class members' claims."). In addition to commonality, the Named Plaintiffs must show typicality, *i.e.*, "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).

Finally, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize

class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S at 360 ("The key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (citation omitted).

## II. CLASS ALLEGATIONS

Plaintiffs allege that the class has suffered a number of categories of unconstitutional deprivations caused by Defendants actions or inactions: vermin infestation; inadequate plumbing and unsafe drinking water; unsafe and contaminated food; inadequate cleaning supplies; and insufficient out-of-cell time.

### A. <u>Vermin Infestation</u>

Plaintiffs argue that infestation by vermin, including roaches, rodents, and birds, is a chronic and systemic problem at the NRC, and all class members are harmed by it. The common question they present for certification is whether Defendants' failure to remediate the widespread pest infestation at the NRC violated the Eighth Amendment.

Defendants' arguments separately address the infestation in the kitchen and the rest of the NRC. As for the kitchen, they contend that Plaintiffs' injunctive claims are moot because the facility has been closed and is being renovated. This mootness argument implicitly admits that Plaintiffs have demonstrated a viable class related to their kitchen infestation claims. Indeed, allegations of vermin

5

infestation in the kitchen and food storage areas are naturally common to all class members, who must eat food prepared there. The Court disagrees with Defendants that the class claims are moot, because it cannot be adjudicated at this stage whether the remediation efforts have effectively resolved the issues.

The analysis differs for allegations of infestation in cells. Plaintiffs offer safety and sanitation reports showing that rodents and birds were found in every house at the NRC and statements from the Named Plaintiffs describing their experience of seeing vermin in their cells and elsewhere in the facility. Evidence allegedly proving that the infestation is a systemic issue includes testimony that there have been no appropriations made to IDOC's budget for the prevention, management, or treatment of vermin at the NRC since May 2021; and employee testimony that they were not aware of any written policies or procedures regarding vermin prevention at the NRC.

Defendants challenge the claim that the NRC's pest control practices are universal, or universally deficient. For example, Plaintiffs' expert, who studied safety and sanitation inspections from January 2020 to August 2024, found three separate groups of pest control practices within the NRC: one group generally had satisfactory pest management (comprising 38% of housing units); another generally lacked satisfactory pest management practices (38% of housing units); and the final group had unsatisfactory pest management the majority of the time but demonstrated satisfactory pest management during approximately twenty weeks of the period considered (25% of housing units). In addition, other evidence cited by

6

Plaintiff does not establish a system-wide failure to address unhygienic conditions: the failure to include pest control as a line item in a state-wide appropriations bill does not demonstrate a common failure to deal with the problem; and although there are not separate written policies for the NRC to deal with vermin infestation, policies do exist at the department-wide level.

Prisoners are entitled to "the minimal civilized measure of life's necessities," including adequate shelter. *Farmer v. Brennan,* 511 U.S. 825, 8334 (1994). However, "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). Plaintiffs' complaint asks for a finding that the conditions in the NRC are unconstitutionally deficient. It is therefore not enough to say that vermin exist; they must exist in such numbers or in circumstances leading to the conclusion that the deprivation poses a "substantial risk of serious harm." *Farmer,* 511 U.S. at 834.

Plaintiffs respond that the issue of vermin in housing units does not require an individualized inquiry, because vermin do not respect cell boundaries. That may be true, but Plaintiffs' own evidence shows that the level of infestation was not consistent throughout all housing units, and it suggests that there was not an unconstitutionally serious problem in a significant number of cells. The degree of infestation in NRC cells varies widely because, as Plaintiffs' expert noted, pest-control issues are highly dependent on the putative class member's cell house, as well as the extent to which refuse was allowed to build up in adjacent cells. An

Eighth Amendment claim based on "filth and infestation" is a fact-specific inquiry that "[d]epend[s] on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have . . ., and how long the infestation continues . . ." *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016). Whether the existence of vermin in cells meets the requirements of an Eighth Amendment violation requires a "holistic view of the conditions." *See Id.* at 1006. Accordingly, individual questions abound, defeating commonality, typicality, and the suitability of a Rule 23(b)(2) injunction.

### B. <u>Plumbing</u>

Plaintiffs maintain that all NRC prisoners are affected by systemic plumbing problems and ask to certify the following question: whether Defendants' failure to remediate the deficient plumbing system at the NRC violated the Eighth Amendment. The Named Plaintiffs have testified that their cell water has made them ill, their toilets were covered with mold, the water in their cells was discolored and foul-smelling, and they experienced frequent plumbing failures. Plaintiffs allege that Defendants have been aware of the hazardous condition of the water since at least May 2021. Legionella was detected at the NRC in tests conducted in May 2022, November 2022, and December 2023; the NRC did not comply with the Illinois Environmental Protection Agency's ("IEPA") requirements for several months beginning around August 2022; water samples taken in 2021 and 2022 contained copper in excess of IEPA's limits; and the NRC does not track locations

that consistently test positive for Legionella. Plaintiffs also assert that based on their experts' reports, the water at the NRC exceeds the maximum allowable contaminant levels, poses health risks, and IDOC has not given adequate notification of the risks, nor has it provided safeguards to ensure safe and hygienic water and plumbing.

Defendants concede commonality and typicality as to their allegedly inadequate practices relating to the potential presence of harmful contaminants and bacteria in the NRC's drinking water.[1] Defendants, however, dispute whether their allegedly inadequate maintenance and cleaning of plumbing fixtures in the cell houses and their practices affecting the taste, appearance, and odor of drinking water meet the commonality requirement.[2]

Defendants contend that (1) Plaintiffs have failed to identify a class-wide policy or practice that caused delayed plumbing repairs or inadequate sanitation

---

[1] Specifically, Defendants do not dispute that commonality exists for the following question: "Whether Defendants' policies and practices relating to maintaining appropriate levels of (i) chlorine, (ii) lead, (iii) copper, (iv) trihalomethanes, (v) bacteria/*E. coli*, and (vi) *Legionella* in NRC water constitute deliberate indifference to a substantial risk of harm." Defendants do not admit a number of Plaintiffs' factual allegations made in support of their claim of contaminated water.

[2] Plaintiffs do not definitively seek to certify a class of prisoners who were harmed by the poor quality of the NRC's drinking water's taste, appearance, and odor, but given the number of allegations related to the NRC's drinking water, which Plaintiffs have described as "discolored and foul-smelling" and "cloudy," the Court will briefly address the issue. "The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Thus, to the extent that Plaintiffs intend to include in the class claims related to water other than contamination, they are stricken. Even if one could find that poor quality water was an unconstitutional deprivation, the question would require individualized determinations.

maintenance; (2) Plaintiffs' evidence of class-wide harm is limited to the testimony of the Named Plaintiffs and the isolated observations of their expert who saw a small number of showers on a single day; and (3) Plaintiffs have not demonstrated that the answer to any particular question regarding the adequacy of plumbing sanitation maintenance would "resolve an issue that is central to the validity of each of the claims in one stroke," citing *Phillips*, 828 F.3d at 553.

Inadequate in-cell plumbing generally does not, by itself, rise to the level of a constitutional violation, but it can form the basis of a deprivation claim depending on the duration and severity of the problem as well as the combination of other circumstances in which it exists. *See Vinning–El v. Long,* 482 F.3d 923, 923–25 (7th Cir. 2007) (reversing summary judgment where the prisoner was deprived of basic sanitation items and incarcerated for six days in a cell in which blood and feces were smeared on the walls, water covered the floor, and the sink and toilet did not work); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (recognizing a constitutional claim where a cell lacked running water for three days, feces were smeared on the wall, and the prisoner's request for cleaning supplies were ignored); *Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *3-4 (N.D. Ill. Feb. 3, 2017) (explaining that "[w]hen assessing the objective severity of unsanitary conditions, the court must consider their nature and duration, as well as any resulting harm" and finding no constitutional violation when a toilet could not flush for a week but "not that much" feces spilled out of the toilet onto the floor, and the prisoner was allowed to clean it up, so it could not be said that the conditions were

unconstitutionally unsanitary); *Jones v. Dart*, No. 14 C 3208, 2015 WL 500532, at *3 (N.D. Ill. Feb. 4, 2015) (concluding that the Eighth Amendment's objective test was satisfied when plaintiff was confined to his cell without running water for thirty-four days); *Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *11 (N.D. Ill. June 5, 2013) (identifying potentially unconstitutional conditions when the prisoner had "a non-functioning sink, a broken toilet, the smell of feces, temperatures at or close to 100 degrees Fahrenheit, and poor air circulation, all for a period of 45 days").

Plaintiffs do not allege system-wide failures of the plumbing system affecting the entire class. Rather, Defendants unconstitutional actions are alleged to be poor maintenance and repair of plumbing problems. By definition, Defendants' behavior only affects the subset of prisoners who had plumbing issues requiring maintenance; and the only class members who could make out a constitutional claim would be those for whom the lack of repair, in conjunction with other factors, resulted in a serious deprivation of life's necessities. Even shower maintenance problems, which affect a broader swath of putative class members than do cell plumbing issues, would not uniformly amount to an Eighth Amendment violation.

Plaintiffs respond that Defendants' arguments go solely to the merits of Plaintiffs' claims, not to the propriety of class treatment. Plaintiffs emphasize that they allege common conduct (the failure to remedy deficiencies), which justifies class certification. Plaintiffs are correct that it would be inappropriate to adjudicate the merits of their allegations at the certification stage. But as the Supreme Court

11

has explained, a court's rigorous Rule 23(a) analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 350-51. It is entirely appropriate, and necessary, to consider the elements of the asserted claims to determine whether they are amenable to class-wide resolution. Even if a trier of fact concluded, for example, that the NRC's plumbing repair policies were inadequate and led to unreasonable delays, that answer would not resolve the question of whether those policies violated the Eighth Amendment without an individualized exploration into the nature of the plumbing problems, the severity of the delays, and the existence of other relevant factors.

The Court does not doubt that a non-zero number of prisoners at the NRC could plausibly state a claim for an Eighth Amendment violation based on plumbing deficiencies. But that is not the question on class certification. The only issue pending is whether Plaintiffs' plumbing claims warrant class treatment, and the Court concludes class certification is inappropriate because the claims lack commonality and typicality, and no Rule 23(b)(2) injunction could be crafted to provide relief to the entire class.

### C.    <u>Nutrition and Food Handling</u>

Defendants admit that commonality can be shown for Plaintiffs' class question related to alleged systemic contamination of food prepared in the NRC kitchen, *i.e.*, "Whether Defendants' policies and practices relating to the prevention of spoliation and/or contamination of food prepared in the NRC kitchen constitute deliberate indifference to a substantial risk of harm."[3]

Defendants argue, however, that Plaintiff's claims of inadequate nutrition cannot be evaluated on a class-wide basis and thus fail to show commonality.[4] The NRC provides a baseline menu that a licensed dietitian retained by IDOC has determined meets national dietary guidelines for the facility's general population. If that diet does not meet the needs of a particular individual, that individual can be prescribed an appropriate supplemental or replacement diet. According to Defendants, the determination of whether the NRC's nutrition program adequately met the needs of class members would require a case-by-case evaluation of each proposed member's nutritional needs, and a determination whether the NRC violated the Eighth Amendment by deliberately failing to provide the member with

---

[3] As with Plaintiffs' claims of contaminated water, Defendants do not concede a number of Plaintiffs' evidentiary claims with respect to food safety.

[4]  Plaintiffs argue that Defendants improperly have split their allegation relating to the failure to provide safe, nutritious food into two categories: (1) sanitary food handling; and (2) nutrition. According to Plaintiffs, the claim should not be separated, because "[i]t is unclear how Defendants could provide adequate nutrition to prisoners while serving them inedible and contaminated food." (Pls.' Reply at 8.) Plaintiffs allegations, however, relate to two separate aspects of the prisoners' diet – the nutritional adequacy of the menu offered and food safety, and thus the Court will analyze the nutrition allegations under the framework suggested by Defendants.

an appropriate diet to meet those needs. Plaintiffs maintain that individual questions surrounding prisoners' supplemental diets are irrelevant, because they challenge the nutritional adequacy of all meals, both baseline and therapeutic diets.

The Court concludes that there are common questions about the baseline diet offered to all prisoners. Whether the nutrition in that meal is unconstitutionally deficient for the average adult male is a question that is capable of class-wide resolution. Therapeutic or supplemental diets, on the other hand, inevitably require a case-by-case analysis to determine whether the nutrition is adequate to meet that individual prisoner's needs.

### D.    <u>Adequacy of Cleaning Supplies</u>

Defendants argue that Plaintiffs' allegation of insufficient cleaning supplies fails because it is impossible to evaluate the claim under the Eighth Amendment on a class-wide basis. As acknowledged in the Third Amended Complaint, the NRC's policy is to provide individuals in custody with soap and paper tissue at least once every one to two weeks, and this policy is generally followed. A Named Plaintiff also testified that he had monthly access to additional cleaning supplies including bleach, all-purpose cleaner, a broom, and a dustpan.

Defendants contend that it is impossible to determine the sufficiency of cleaning supplies for all members of the class "in one stroke," and thus commonality is not satisfied. Defendants cite *Gray v. Hardy*, 826 F.3d 1000 (7th Cir. 2016), where the court explained that it has "recognized Eighth Amendment violations where prisoners are deprived of cleaning supplies and running water only in extreme

circumstances." *Id.* at 1005 (describing examples including severely unhygienic conditions, coupled with lack of access to running water and cleaning supplies). Plaintiffs counter that under Defendants' analysis, a class action would be unavailable even if no cleaning supplies were provided.

The Court finds that the issue of the adequacy of cleaning supplies would require an individualized determination, making class treatment inappropriate. *See id.* at 1006 ("[Plaintiff] must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered some cognizable harm from the overall lack of a sanitary environment . . . ."). Unlike in their hypothetical, Plaintiffs do not allege that *no* cleaning supplies are given to the prisoners; instead, they maintain that supplies are not adequately distributed in certain factual circumstances. While that may be true, Plaintiffs have not presented a question with respect to the adequacy of cleaning supplies to which a trier of fact could easily answer "yes" or "no." Particularly in the context of cleaning supplies, where the bar for demonstrating unconstitutional deprivation is quite high, and indeed requires an examination of a combination of other factors, it is impossible to find commonality among the putative class members' claims.

### E.   Out-of-Cell Time

Defendants maintain that Plaintiffs cannot show commonality as to their claim of inadequate out-of-cell time, again because the question can only be answered on an individual basis. As with the lack of cleaning supplies, limiting out-of-cell time only implicates the Eighth Amendment in fairly extreme circumstances

and a determination must also be viewed in combination with other relevant factors, such as the individual's health conditions. According to Defendants, the nature of the NRC makes it even more difficult to find commonality with respect to the adequacy of out-of-cell time because individuals may be housed there for a couple of weeks or many months.

Plaintiffs argue that the fact that some class members may not been injured by the policy does not defeat certification because Defendants' conduct – failing to allow adequate out-of-cell time – is common to the class. Denial of out-of-cell time was a matter of policy and practice, resulting from inadequate staffing. Plaintiffs point out that even individuals in restricted housing are required to be given a minimum of ten hours out of their cells per week pursuant to IDOC directives, and prisoners at the NRC regularly received far less.

Plaintiffs have identified particular policies severely limiting time out of cells, including cancelling yard time due to staff shortages. The question of whether those policies violated Plaintiffs' Eighth Amendment rights is common to all class members, and an affirmative answer, it could be remedied through a class-wide injunction. The fact that some class members may have suffered greater harm because they were house at the NRC longer does not defeat commonality.

## F. Totality of Conditions

In their reply brief, Plaintiffs spell out the argument that they can satisfy the commonality prong through a "Totality of Conditions" analysis. They contend that all of Plaintiffs' various claims arise from Defendants' failure to act, and the

challenged policies and procedures (or the lack thereof) apply to the entire class. But Plaintiffs cannot simply wave their hands and deem conditions are generally unconstitutional when viewed in combination.

"Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.' . . . That's because '[n]othing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.'" *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022). As described above, combinations of conditions can together create an Eighth Amendment violation, *e.g.*, severe plumbing problems are combined with a lack of sanitation. But as Plaintiffs allege the totality of the circumstances here, individualized determinations would be necessary to find which conditions affect each class member, followed by the calculus of whether each particular prisoner's permutation of conditions fall below constitutional standards. None of the cases they cite in support are class actions, and their reliance on specific factual allegations only serve to reinforce the point that an individual inquiry is necessary to determine whether the totality of conditions can amount to a constitutional violation. *See Gray*, 826 F.3d at 1005-06 (explaining that complaints about cockroaches, lack of cleaning supplies or fresh towels, and broken windows would not necessarily constitute an Eighth Amendment violation on their own, but they

17

could make a claim when viewed as a whole); *Mims*, 2013 WL 2451149, at *10-11 (noting that the Eighth Amendment inquiry requires an assessment of both the severity and duration of the alleged violations); *Hicks v. Irvin*, No. 06-CV-645, 2012 WL 4092621, at *5-6 (N.D. Ill. Sept. 17, 2012) (concluding that allegations that for a week, a prisoner suffered from a lack of water, a backed-up toilet, and an insect infestation created an issue of fact as to whether he was denied basic needs).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification [Doc. No. 174] is granted in part and denied in part. The class is certified as to the following claims: vermin infestation in the kitchen and food storage areas; contaminated water; practices related to the prevention of food spoilage and/or contamination; and out-of-cell time.

**SO ORDERED.**                    **ENTERED:**

**DATE:   November 14, 2025   **                    _____

**HON. MARIA VALDEZ**
**United States Magistrate Judge**

18